Benedict *v.* Goit.

Barbour.
3   459
57h   60

SAME TERM.  *Before the same Justices.*

## BENEDICT *vs.* GOIT.

The 29th section of the general statute concerning turnpike corporations, (1 *R. S.* 581,) and the 26th section of the act concerning plank and turnpike roads, passed in 1837, which confer upon turnpike and plank road corporations the power of taking any public highway, by appraising the value of the public interest in the road, or agreeing upon the amount with the supervisor and commissioners of highways, and paying the same to the commissioners of highways to be by them applied to the improvement of the roads in their respective towns, are not unconstitutional.

A public highway taken by a plank road corporation, by virtue of the statute and of its act of incorporation, does not cease to be a public highway. And when the corporation has paid the commissioners of highways for the interest of the public in the road, it succeeds to all the rights of the town commissioners to make such repairs in the road as the public interest requires; whether such repairs consist in excavations or embankments to bring the road to a proper grade, and thus to improve its condition as a public thoroughfare.

And any inconvenience or damage which any person may suffer by the proper and reasonable repairs of such public highway by the corporation, in the legitimate exercise of the powers conferred by the statute, is *damnum absque injuria,* and no action lies therefor.

But for any unreasonable exercise of the power conferred by the statute the corporation, or its agent, is responsible.

Benedict *v.* Goit.

DEMURRER to plea. The action was trespass, and the declaration, in the first count, charged the defendant with entering upon a portion of the plaintiff's land and premises and digging up the soil and carrying and removing the soil so dug up, to another portion of the premises, so as to raise an embankment thereon to the height of eight feet, and placing thereon and attaching thereto divers planks, timbers, and other erections. The second count was for entering upon the plaintiff's premises and digging up, cutting down, removing and carrying away the soil to the depth of six feet, whereby a deep cutting was made on the premises, and the adjoining portions were rendered inaccessible, useless and valueless, and the plaintiff's premises were otherwise greatly injured, and their value diminished. The third count was for carrying and conveying to a certain part of the plaintiff's premises and placing thereon, large quantities of soil and earth, thereby erecting and raising thereon a mound, or bank, or embankment of earth, of the height of eight feet and of the width of thirty feet, whereby the lands and premises and the buildings, &c. of the plaintiff were greatly injured, and the use and enjoyment thereof greatly obstructed and interfered with, and the plaintiff put to great expense, inconvenience and loss. The fourth count stated that the plaintiff owned and possessed a certain messuage and dwelling house and yard and outbuildings connected therewith, and a barn and shed therewith used and connected, and used and occupied by the plaintiff as an inn or tavern stand, on and adjoining a public highway which ran between the dwelling house and the barn and shed; and that the defendant raised and constructed on said highway near the said dwelling house and between the same and the barn and shed, a mound or embankment of earth eight feet high and thirty feet wide, for the distance of thirty rods, whereby the passage of the plaintiff and his family, servants and guests, and of horses, carriages, and teams upon the highway, to and from the dwelling house to the barn and shed, was obstructed and prevented, and the plaintiff had been put to great expense in filling up and raising the space near and about his dwelling house and between the same and the highway, so as to render

practicable and safe the passage to and from the house and highway, and had been compelled to raise up and elevate the house and outhouses, at great expense, and whereby he was deprived of the use of the highway, and the water was thrown in and upon the dwelling house and the cellar thereof. That the house was thereby greatly injured, and access thereto, and the use and enjoyment thereof, greatly interfered with and obstructed; and that the plaintiff had incurred great expense in raising the house, barn and shed, and in filling up and raising the surface of the ground near and about the same, and that he was greatly injured and inconvenienced in the enjoyment of his premises, and the value thereof was greatly depreciated and diminished.

The defendant pleaded, 1st. Not guilty, and 2dly. That by an act of the legislature passed May 7th, 1844, entitled "An act to authorize the construction of a road from Rome, in the county of Oneida, to Oswego, in the county of Oswego," a certain corporation was created by the name and title of the "Rome and Oswego Road Company," with power to construct and maintain a plank road from Rome to Oswego; that a company was duly organized in pursuance of said act, and directors chosen; that a board of five persons was appointed by the directors, who determined on the route of the road; that the route so determined on coincided as nearly as was practicable with the stage route between the two places; that the company entered upon and commenced the construction of the road in accordance with the provisions of the act, upon that route; that they appointed and employed the defendant as their agent and servant for the purpose of constructing such road; that the public highway mentioned in the plaintiff's declaration was, at the time when the said act was passed, and at the time of doing the acts complained of, a part of the said stage route from Rome to Oswego; that at the place where said acts were alleged to have been done, the route of the road so determined on coincided with the route of the highway and with the said stage route; that the board determined that the highway and stage route should at that place be the route of the said road; that for the purpose

Benedict *v.* Goit.

of duly constructing said road so authorized by the said act, in the manner authorized thereby, on the said stage route, it became and was necessary to do the said several acts in the declaration mentioned, at the places alleged in the declaration; that thereupon the defendant did, as the agent and servant of the said company, in the due and proper construction of the said road, in the manner authorized by the said act, the several acts in the declaration mentioned; that acting as such servant and agent he did, in the construction of the said road, and in doing the acts complained of, use all due and proper care and skill; and that the injuries complained of by the plaintiff, were, if they were sustained by him, unavoidably and necessarily attendant and consequent upon the due and proper construction of the road in the manner authorized by the act, on the route so determined on; which are the same supposed grievances, &c.; concluding with a verification.

The plaintiff demurred to the defendant's second plea, and assigned the following causes of demurrer. 1. That the plea does not aver or show that the company in said plea mentioned, or the said defendant, before entering on and taking the premises therein mentioned for the use of their said road, and before doing the acts therein mentioned, or at any time, paid or offered to pay, or took any means to ascertain or to have appraised the damages sustained or to be sustained by the plaintiff, by reason thereof. 2. That the plea does not aver or show that the company therein mentioned, or the defendant, at any time agreed with the plaintiff that they or either of them might enter on and take and use the said premises for the purpose of constructing the road in the plea mentioned, or that the plaintiff in any manner assented to, or permitted such entry, taking or use. 3. That it does not appear, and is not averred in said plea, that before the said company, or the defendant, entered on and took possession of the highway in the plea mentioned, as is therein mentioned, the same was appraised and paid for. 4. That the act of the legislature in the plea set up and pleaded, as the same is therein stated and pleaded, does not contain any provision for indemnity or compensation to the plaintiff, or to any

person or persons whose premises might be taken and used by the said company in the manner and under the circumstances in and under which it appears by the said declaration and said second plea, that the premises of the plaintiff were taken and used. And that therefore the said act is in this respect unconstitutional and void. 5. That the said plea does not contain or show any defence to said declaration. 6. That it does not contain or show any defence to the first three counts of said declaration. 7. That it does not contain or show any defence to the fourth count of the said declaration.

Joinder in demurrer.

*C. P. Kirkland,* for the plaintiff. I. The plaintiff was the absolute owner of the premises in question, subject only to the right of the public to pass and repass on the same as a public highway. (1 *Cowen,* 88, *note.* 3 *Kent,* 432, 434. *Stackpole* v. *Healy,* 16 *Mass.* 35. 3 *Wend.* 142. 25 *Id.* 462. 4 *Hill,* 140. 3 *Id.* 567.) II. The act incorporating the " Rome and Oswego Road Company" creates them a corporation, and professes to give them authority to take and use this highway for their own gain and profit, to construct a road thereon, to erect gates, and to demand and receive tolls, &c. In substance it authorizes, and professes to authorize them to take and use this highway for the purposes of the corporation; and thus authorizes the taking of private property for these purposes; and it makes no provision for compensation. The act is therefore in this particular unconstitutional and void, and it gave the company no power to take and use the plaintiff's property as they did. (*Const. U. S. art.* 5 *of Amendments. Const. of N. Y. art.* 7, § 7. *Trustees First Presb. Soc. Waterloo* v. *Aub. and Roch. R. Road Company,* 3 *Hill,* 567. *Seneca Road Company* v. *Aub. and Roch. R. R. Company,* 5 *Id.* 170. 25 *Wend.* 462.) III. Irrespective of the plaintiff's ownership of the fee of the highway, and assuming him not to be such owner, the company are liable to him *as owner of the adjoining premises,* for the damages stated and claimed in the fourth count. (*Fletcher* v. *Auburn and Syracuse R. R. Company,* 25 *Wend.* 463.)

Benedict v. Goit.

IV. The company had no right to enter on and take this highway, till the damages mentioned in the 29th and 30th sections of the general turnpike act were appraised and paid, as provided in those sections. (*Laws of* 1844, *p.* 434, § 2. 1 *R. S.* 586, §§ 29, 30, 2*d ed.*)  V. If the 25th, 26th and 27th sections of the general turnpike act are to be deemed as incorporated in and forming part of the act in question, and as providing compensation for the plaintiff, and thus obviating the objection as to constitutionality, this action is equally sustainable; for the company have in no respect complied with those sections. (*Laws of* 1844, *p.* 434, § 2.  1 *R. S.* 585, 6, §§ 25, 26, 27, 2*d ed.* *Bloodgood* v. *Mohawk, &c. R. R. Company,* 18 *Wend.* 1.)

*C. Comstock,* for the defendant.  I. The *locus in quo* being a public highway, the Rome and Oswego Road Company, by virtue of its charter and the general turnpike law, (which is adopted as a part of its charter,) and the proceedings under the same, acquired all the rights in respect to building, repairing, amending, &c. the road, which the commissioners of highways, or other proper officer representing the town, previously possessed. (*Laws of* 1844, *ch.* 293, *p.* 434, §§ 2, 5, 7, 8. 1 *R. S.* 583, §§ 29, 30.) II. The statutes authorizing turnpike and other road corporations to acquire the right to use a public highway, by making compensation to the town in which it is located, and without compensation to the owner of the soil, are valid and constitutional.  (1 *R. L. of* 1813, *ch.* 38, *p.* 228, § 3, *latter part.* 1 *R. S.* 583, §§ 29, 30.  *Laws of* 1847, *p.* 216, *ch.* 210, § 26.  12 *Wend.* 371.  *Commonwealth* v. *Wilkinson,* 16 *Pick.* 175.)  III. The grievances complained of consisted only in the construction and improvement of the road in question with proper skill and care, and do not constitute a cause of action against the defendant. (*Gov. and Co. Br. Cast Pl. Manuf.* v. *Meredith,* 4 *T. R.* 794. *Callender* v. *Marsh,* 1 *Pick. Rep.* 418.  *Lansing* v. *Smith,* 8 *Cowen,* 146.  *Sedgwick on Damages,* 110.)

*By the Court,* GRIDLEY, J.  The questions raised upon the demurrer in this cause involve the constitutionality of one of·

the provisions of the act organizing the "Rome and Oswego Road Company," and authorizing the construction of the road known as the plank road, leading from Rome to Oswego. By the second section of the act, (*Laws of* 1844, *p.* 434,) the provisions of the general statute concerning turnpike corporations, (1 *R. S.* 581,) are adopted, and made applicable to the road in question. The 29th section of the general act confers the power of taking any public highway, by appraising the value of the public interest in the road, and paying the same to the commissioners of highways, to be by them applied to the improvement of the roads in their respective towns. It is this particular provision to which the plaintiff objects. He lives upon the line of the road which has been constructed upon the site of a public highway that has been appropriated under this section ; and he complains that the defendant has committed an unwarrantable trespass upon his land by the act of building the road ; and also that in grading it an embankment has been raised in the front of his dwelling house, so that he has been compelled to incur considerable expense and inconvenience in raising his buildings to the level of the road. The defendant has in his plea justified the alleged trespass, under the act, as a servant of the company ; and to this plea the plaintiff has demurred.

The ground assumed by the plaintiff is that the "*locus in quo*," since its appropriation by the company, has ceased to be a public highway, and therefore that the entire interest in it has reverted to him as the original owner ; and doubtless the conclusion follows as a legal consequence if the premises are admitted to be correct. Several cases have been decided in this state, holding that rail-road companies, which have occupied portions of the public highway, are liable to the owners of the soil for an unlawful invasion of their rights. (3 *Hill,* 567. 25 *Wend.* 462. 5 *Hill,* 170.) But a rail-road is in no sense a public highway. The nature of the road forbids its use by the public in common with the company. But the position assumed by the defendant's counsel is that the road in question in this suit is a *public highway still,* open for the public use, precisely as is every public road in the state ; and that the corporation

organized by the act before cited has succeeded to all the rights and powers of the commissioners of highways, in the several towns through which the road passes.   We are of this opinion,

I.  That the road is public in the sense that every citizen has the right to travel on it, either on foot, on horseback, in his carriage, or with his team, subject to the payment of the legal tolls, is undeniable.   The object of the legislature in passing the act seems to have been two-fold : 1st.  To provide for a better road than is ordinarily constructed under the supervision of the town commissioners.   In order to carry out this design, the sixth section of the act declares that the " track of said road shall be constructed of timber, plank, gravel, or other hard material, so that the same shall form a hard, smooth and even surface."   It cannot be doubted that the legislature has the power to ordain by law that all the public highways in the state shall be graded, leveled, and constructed of some hard substance, under the direction of the town commissioners, so as to form a hard, smooth and even surface.   And it is equally clear that the commissioners in the respective towns, by virtue of the powers they now possess, may in their discretion improve the public highways in all these respects, to the extent of the means under their control.   No importance should be attached to the idea of a plank road : for the intent of the act was simply to provide for a road constructed of some hard and durable material.   A gravel road would equally have satisfied the requirements of the act.

A further object of the legislature was to provide for a different mode of keeping the road in repair.   It devolves the *duty* upon the corporation instead of the town commissioners, and provides for raising the *necessary funds* by levying tolls on those who travel on the road, instead of resorting to an assessment upon the inhabitants of the respective districts.   We do not see why these provisions are not entirely within the power of the legislature.   May they not vest the oversight of the public roads in any other agent than the commissioners ?   And may they not provide any other mode which seems to them more

equitable and expedient for keeping the roads in repair, than the ordinary highway assessment? And if these provisions should be extended to all the public highways in the state, would they cease to be *public highways*? And would the public interest in the roads become forfeited by such an act, and the owners of the fee of the lands over which the roads are constructed, succeed to their original estate in those lands, discharged of the right of the public to use them as public highways? We think not. And if this consequence would not follow from a general exercise of this power by the legislature, we do not see why it should in the particular instance in question. To deny the power of the legislature to exercise this extensive control over the public highways in the state, would be to interpose an effectual barrier to any important improvement in our public roads and thoroughfares, and would operate most injuriously upon the advancement and prosperity of the commercial, manufacturing, agricultural and social interests of the community. We are of the opinion therefore, that, upon principle, the road which was taken by this company by virtue of the provisions of the act, did not cease to be a public highway; and that when the corporation paid the commissioners of highways for the public interest in the road, it succeeded to all the rights of the town commissioners to make such repairs in the road as the public interest required, whether such repairs consisted in excavations or embankments, to bring the road to a proper grade, and thus to improve its condition as a public thoroughfare.

II. This question seems to have been settled, so far as such a question can be settled by legislative authority. It is not pretended by the counsel for the plaintiff that any difference exists between the rights acquired by this corporation, and those to which a turnpike company would be entitled under the like circumstances. The provision in question has been incorporated in the acts relating to turnpike companies for more than forty years. The original turnpike act was passed in 1807, and was re-enacted in the revision of 1813, and again in 1830 : and the principle was again distinctly asserted in the 26th section of the act concerning plank and turnpike roads, passed in 1847,

(*Laws of* 1847, *ch.* 210, *p.* 216, § 26.)   During all this period—
within which the state has been traversed in every direction by
turnpike roads, in the construction of which the right which is
now drawn in question must have been most extensively exer-
cised—we have no knowledge that any individual has com-
plained of the exercise of this right, or controverted the consti-
tutionality of the act which conferred it.   This long practice
under the law, in addition to its repeated re-enactment, though
not conclusive, nevertheless is strong evidence in favor of the
correctness of our views upon the question under consideration.
This however is not all.   The point has been directly adjudi-
cated in the case of *The Commonwealth* v. *Wilkinson*, (16
*Pick.* 175.)   In this case a turnpike road was adjudged to be a
public highway.

It is not to be denied that the corporation have an interest,
of a certain description, in the road.   They may doubtless re-
cover damages against any person who shall commit an injury
upon it.   This is, however, precisely the same interest which
a public agent would possess in it, who should be employed un-
der a legislative enactment to keep the road in repair, for a
given compensation.   Again, every citizen over whose lands
a public road is laid out, retains an interest in the road.   He
still owns the fee of the land, and may maintain ejectment or
trespass against third persons who take possession of it, or use
it for any other purpose than a public highway.   The public
interest in the road is merely that of a right of way; and we
cannot see how the interest which any individual or corpora-
tion may have in the road, that does not interfere with this
right, can in any degree affect its character as a public high-
way.   The interest which this corporation has in the road in
question is entirely compatible with the use of it as a public
highway, subject only to the single condition of paying tolls;
and this, as we have already seen, is a burden imposed ex-
pressly for the keeping of the road in repair.   And in many instan-
ces it is far more equitable than the common mode, by assess-
ment of a highway tax.   By the latter mode, a citizen, whose
employment consists in drawing heavy loads over a given tract

of highway, in no degree indemnifies the public for the repairs which he renders necessary, by the insignificant assessment which he pays in his own district. In all such cases, the system of tolls is a far more equal and just one.

III. The claim made under the 4th count of the declaration must depend upon the decision of the question we have just considered. If the corporation has succeeded to the rights and powers of the commissioners of highways, then any inconvenience or damage which the plaintiff has suffered by proper and reasonable repairs of the public highway is " *damnum absque injuria.*" If the commissioners see fit, for the purpose of grading a highway, to cut down a hill, or to raise an embankment in the road adjacent to the premises and dwellings of citizens, by which those citizens suffer expense and inconvenience, no action can be maintained for the injury. This question was thus settled in the case of *Graves* v. *Otis*, (2 *Hill*, 466,) where the injury complained of consisted in cutting down an eminence in a public street and sidewalk in the village of Watertown, by which the plaintiff's store was left some six or eight feet above the level of the sidewalk adjacent to the premises. See also to the same point, 1 *Pick.* 418 ; 4 *T. R.* 794 ; 8 *Cowen*, 146 ; *Sedgwick on Damages*, 110.

We have not inquired whether it was necessary to allege in the plea that the value of the public interest in the road had been appraised and paid to the town commissioners, nor whether any other criticism may be applied to the plea. But we have assumed that the acts for which the action is brought were done in the legitimate exercise of the powers conferred by the statute, and were incident to the right of constructing a road of a proper grade, and so as to form a hard, smooth and even surface, as directed by the 6th section of the act. In doing this, we have complied with the request of the counsel of both parties; their object being to obtain a decision of the important constitutional question which we have discussed. But for any unreasonable exercise of the power conferred by the act, the agent is responsible ; and if such a case can be made out,

the plaintiff should have the opportunity to amend his declaration.

The demurrer is therefore overruled, with the right to amend on payment of costs.

---

SAME TERM. *Before the same Justices.*