J. R. Swan, J.
In Goodloe v. City of Cincinnati, 4 Ohio, 500, it was held that where a corporation maliciously and illegally digs down a street, whereby the walls of a house are injured, the cellar ■destroyed, etc., the corporation is responsible.
In Smith v. City of Cincinnati, 4 Ohio, 514, it was held that the corporation was liable in such case, in the absence of all malice, if its acts were illegal.
In Scovil v. Geddings et al., 7 Ohio (pt. 2), 211, which was an action of trespass, brought, not against the corporation, but persons acting under the orders of the trustees of a town, for injuries to lots, sustained by individuals in grading a street, it was held that the defendants were not responsible, individually, for doing what the trustees were authorized by law to do.
*The reasons given by the judge who delivered the opinion in this last-mentioned case goes further; but that the scope of the decision is only what I have stated, will appear from the statement of the case and the remark of Lane, J., in Rhodes v. Cleveland, 10 Ohio, 161, who says: “In Scovil v. Geddings et al., we held the agents of the trustees of a town not liable, because they were acting within their jurisdiction.
Avery, J., in delivering the opinion of the court in the case of The Town of Akron v. McComb, 18 Ohio, 231, says of the case of Scovil v. Geddings et al.: “No one can deny the correctness or propriety of that decision. If the town has power to cause the act to be done, and the agents perform it in strict accordance with the legal order, they can not, of course, be made personally liable.” Indeed, the case of Scovil v. Geddings et al. has never been overruled, and remains the law of this state.
In Rhodes v. City of Cleveland, 10 Ohio, 160, which was an action on the case for cutting ditches and water-courses in such a manner as to cause the water to flow upon and wash the plaintiff’s land, it was held that the corporation was liable. An individual *420 may lawfully dig ditches upon his own land, but he has no right to thereby overflow the land of his neighbor. The court adopt the same principle in respect to corporations which is applicable to individuals in the use of their property, The court say: “We hold that corporations are liable, like individuals, for injuries done, although the act was not- beyond their lawful powersand this, upon the principle of justice and good morals, that it should “repair a consequential injury which ensues from the exercise of its functions.”
We come now to the case of McComb v. Town of Akron, 15 Ohio, 474, and the case of Town of Akron v. McComb, 18 Ohio, 229. The two cases are the same. In these cases it appeared that McComb was the owner of a lot in Akron, upon which he had erected a brick building, and had fitted it up for the purpose of merchandising. He had made his improvements with an express view to the level and grade of Howard street, adjoining which the building stood. After he *had thus made his improvements with a view to the level and grade, the town council caused the ground-in front of his building to be excavated, in consequence of which the value of his house and lot was greatly injured ; and for which he brought the action against the town.
It would seem from this statement of the case, that the corporation of the town of Akron, in changing the level and grade of' Howard street, acted within the the scope of their authority; did not disturb the soil of McComb’s lot, or undermine his building; but lawfully so changed the grade of the street as to make the store of McComb, in its relation to the street, less accessible and convenient ; and that the action waB brought to recover damages on that account. The court held that, although the town was authorized to make the improvement, and had not exceeded the power conferred upon them, and had proceeded in a proper manner, and with reasonable care, the plaintiff was entitled to his action.
This decision is in direct conflict with English and American cases. Governor, etc., of the Cast Plate Manufactures, 4 Term, 794; Bolton v. Crother, 2 B. & C. 703 (9 E. C. L. 227); King v. Comm. of Sewers, 8 B. & C. 355; Goszler v. Corporation of Georgetown, 6 Wheat. 593; Henry v. Pittsburg Bridge Company, 8 Watts & Serg. 85; Benedict v. Gort, 3 Barb. 459; Radcliff’s Executors v. Mayor of Brooklyn, 4 Comst. 195; Matter of Furman Street, 17 Wend. 667; Wilson v. Mayor of New York, 1 Denio, 595.
*421 The remark of Bronson, J., in Eadcliff’s Executors v. Mayor of Brooklyn, 4 Comst. 205, that “ if in McComb v. Town of Akron, the Supreme Court of Ohio intended to hold that persons, whether artificial or natural, were answerable for the damages which might result to an adjoining land-owner from the grading of a street, though the act was done under ample authority, and in a proper manner, tL.e case is in conflict with many decisions, and can not be law beyond the State of Ohio,” is probably true. And it is also true, that the Supreme Court, in making that decision, were aware that .it was in direct conflict with the decisions both in England and America.
The principle decided by the Akron case was this: Where a ^building is erected upon a lot, with a view to the grade and level of the street, and a corporation undertakes to alter the grade, :and dig down the street, so as to materially impair the value of the erection, the corporation is liable for damages, notwithstanding the legislature has vested in the corporation the power so exercised, and although reasonable care was taken by the corporation to prewent injury.
The Akron case recognizes a private right in a lot owner, to the use of a street abutting on his lot, where he has made erections with a view to the established grade of the street; and for which right, if materially invaded by a new grade, made under legislative authority, there exists a constitutional obligation to make compensation, so far as such right is materially injured or impaired. On the other hand, the English cases, without inquiry whether any such private right to the use of a street exists or not, hold that a lot-owner is not entitled to compensation, unless provision is made therefor by act of Parliament. The American courts have generally followed the English decisions.
It may be proper, therefore, to examine the basis upon which the English cases rest.
The power of the English Parliament is supreme. It would be quite as absurd for English courts to pronounce an act of Parliament, adopted by the throe estates of the realm, unconstitutional, or unauthorized, as for this court to pronounce a provision of the constitution of the United States unconstitutional and void. “ What the Parliament doeth, no authority on earth can undo.” An authority, therefore, derived from the supreme power of the state, or, in other words, operations undertaken and conducted by virtue of *422 an act of Parliament, can not be deemed unauthorized in view of the English law, nor lay any foundation for a common-law acticn for damages. If, indeed, the supreme power of a state authorizes and directs an act to be done, who has the power to pronounce that act unlawful?. No co-ordinate power exists to control it. The grantee of a franchise or a public agent, so long as he does not transcend the authority conferred upon him by act of Parliament, in the exercise even of eminent domain or its incidents, represents the supreme power of the state; and just so *far as the same supreme power has provided the mode and means of compensation for the violation of the rights of private property, in the exercise of eminent domain or its incidents, there is a remedy; but no further. • It is true, that it is the duty of Parliament, and one which is in general scrupulously performed, to provide compensation to-individuals who are deprived of their property,„for the public use, or who are injuriously affected by the erection of public works. But there is no power over Parliament to enforce this duty, or to-create a liability, beyond what Parliament specifically recognizes- and provides. Hence the English courts, in holding that an action against commissioners of streets, or municipal officers or their agents, acting under the authority of an act of Parliament, will not lie for damages occasioned by the construction of a public, work, any further than is especially provided for by the law itself, do not simply decide a principle of municipal law, but announce a. constitutional principle, inseparable from the recognition of a fiat of' the supreme power of the state. Now, if the supreme power were vested in our general assembly; if it could change or create, afresh, by statute or ordinance, the constitution of the state itself,, as the English Parliament may do; if what it done no authority on earth could undo or declare unauthorized or unlawful, the English adjudications would be clearly applicable to the question, whether an act done by authority or direction of a statute could be deemed unlawful or actionable. The English cases, and the American cases in following them, simply vindicate the supremacy of Parliament, and illustrate and carry out in practice, a well-settled principle of English constitutional law.
The general assembly of Ohio is limited and restricted in -its powers. Its statutes are void if unauthorized by the constitution. If, by statute, it confers powers upon municipal corporations, those powers must be exercised, and are presumed to be conferred, in sub *423 ordination to the constitution, and to the rights of property, -whether corporeal or incorporeal. If the land of a citizen or his rights in property are commanded to be taken from him, it is beyond the power of the general assembly to authorize either to be touched until compensation is made.
*The principal, and perhaps the only, question in this case is, whether there is any recognized legal right in the owner of the lot to the street, and whether that right is invaded by destroying or materially injuring access to the lot.
It will not be denied, that if the owner of a lot conveys, by deed,, to his neighbor, and as appurtenant to an adjacent lot, a private way, and the grantee erect buildings on his own lot with a view to-the enjoyment of the easement, the grantor could not lawfully, by digging pits or erecting embankments upon his lot, interrupt the grantee. And if it be found that a lot-owner has a like recognized right to the use of a street, it would seem to follow that such right, of property could not be materially impaired or destroyed without compensation.
The rights of an owner of a lot to use and enjoy the same in any manner he pleases, so that he does not injure or invade the rights of other adjacent lot-owners, is well settled and clearly defined; but it has been seriously questioned .whether the owner of a lot bounded' by a street has any other rights to the street than such as one lot-owner has in the adjacent lot of his neighbor. It would hardly seem necessary to discuss such a question; and yet, in the case of Radcliff’s Ex’rs v. Mayor, etc., of Brooklyn, 4 Comst. 203, which was an action brought against the Mayor of Brooklyn, etc., for-cutting down a street, so that a portion of the lot of the plaintiff,, with the shrubbery, fixtures, fences, etc., fell, the act of the corporation was sought to be justified by the court, on the principle that a man may enjoy his land in the way such property is usually enjoyed, without being answerable for consequential damages to an adjacent owner. It is satisfactorily shown in the elaborate opinion in that case, that owners of adjacent lots have each aright to dig pi ta-in their respective lots, without being answerable to each other. It was necessary, however, in that case, to further hold, that a lot-owner might lawfully dig a pit in his own land, whereby the soil, fences, and shrubbery on the lot of an adjacent owner is removed and falls into the pit. Whether this last proposition is sustainable, it is not necessary to inquire; for it must be conceded, that if the *424 owner of a lot abutting on a street stands in the same relation to the ^street which adjacent proprietors of lots stand in to each other, no right of a lot-owner is invaded by cutting down or blocking up a street, whereby his buildings are rendered inaccessible and worthless.
But let us inquire whether there is any analogy between the rights of a lot-owner in the adjacent lot of another person, and the rights of a lot-owner in an adjacent street.
Distinct from the right of the public to use a street, is the right and interest of the owners of lots adjacent. The latter have a peculiar interest in the street, which neither the local nor the general public can pretend to claim: a private right of the nature of an incorporated hereditament, legally attached to their contiguous grounds, and the erections thereon; an incidental title to certain facilities and franchises, assured to them by contracts and by law. and without which their property would be comparatively of little value. This easement, appendant to the lots, unlike any right of one lot-owner in the lot of another, is as much property as the lot itself. Lexington & Ohio R. R. v. Applegate et al., 8 Dana, 294; Haynes et al. v. Thomas, 7 Ind. 38; Lewis Street, 2 Wend. 472; Livingston v. Mayor of New York, 8 Wend. 85; Rowan’s Ex’rs v. Town of Portland, 8 B. Mon. 232; Bingham v. Doane, 9 Ohio, 165; Le Clercq v. Gallipolis, 7 Ohio, 218; Tate v. Ohio & M. R. R. Co., 7 Ind. 480.
In Bingham v. Doane, 9 Ohio, 167, Lane, C. J., in relation to a highway says: “Its existence generally contributes 'to the enjoyment of the adjacent lot, and confers additional value upon it, and any act of another, which impairs that value, or interferes with that enjoyment, may be the subject of a suit.” . . . “The easement — the privilege of the road — the advantage it confers on his land is his, but not the road itself. The right lies not in livery, but in grant."
This appendant easement forms a large part of the consideration paid for lots, and is of such intrinsic value to lot-owners that, in most cities, assessments for the improvement of streets are made upon the adjacent lots, instead of the city generally.
But while we recognize this right of property in a street as incident *to an adjacent lot, we must also recognize the right
of the public to grade and improve the street; and the question, *425 therefore, is, under what circumstances, and to what extent, must the private right yield to the public?
We hold, as the court below did, that the owner of an unim proved lot can not claim damages for filling, ditching, or cutting down a street; for he is presumed to purchase the lot with a view to a future improvement of the street in such reasonable manner as the public authorities may deem expedient.
We also hold that the owner of a lot upon a street, the grade of which has not been established, must use reasonable care and judgment in making his improvements, with reference to the right possessed by the corporation to make a reasonable and proper .grade; for if, by ordinary care and discretion, the grade could have been anticipated, the owner of the lot can not make the corporation responsible for his own carelessness and indiscretion.
But the question before us is, whether, if a grade has been established by the corporation, and the owner of a lot in good faith erects buildings upon his lot, with a view to the established grade, and. the corporation, afterward, for the convenience of the public, cuts -down the street, so as to substantially and materially injure the buildings; for instance (as in the case of McComb v. Akron)¡ cuts ■down the street in front of a store, so that the owner and the public •-can have no access to the store from the street, the question is whether, under these or like circumstances, the owner has any remedy for such destruction of his property? It is said he has not, ’because it is damnum absque injuria; that is, no right has been in-waded or injured. We hold that when the avenue to the place of Business of the' lot-owner, and his use of the street as an incident to his permanent erections, is thus blocked up or taken from him, ¡after the establishment, and by the alteration of a grade, the private rights of the owner, inherent in and incident to the erections •upon the lot, are invaded, and no curt phrase, like damnum absque ■injuria, can conceal the invasion or the substantial injury.
It is as positive and substantial an injury to private property, ■^and as direct an invasion of private right, incident to a lot, .as if the erections upon the lot were taken for public use. It comes not within'the letter, but manifestly within the spirit of the provision of the constitution which requires compensation for property taken for public use.
In thus affirming the case of McComb v. Akron, we do not deny 4o the corporate authorities of cities and towns a control over tha *426 use, the grade, and regrade of streets. But if, after establishing the-grade, they block up or cut down the street before one man’s house-for the benefit of others, doing a substantial injury, the rights of property have been invaded, and the plainest principles of justice require compensation.
"We think the whole charge of the court below was as favorable* to the plaintiff as the principles of law would justify.

Judgment below affirmed.

Brinkerhoff, Scott, and Sutliff, JJ., concurred.