ALMERE WALKER *v.* NICHOLAS H. CAYWOOD *et al.*

Under the provisions of the act of 1847, ch. 210, where a plank road company takes and uses a public highway for its purposes, the road thus appropriated does not cease to be a public highway. The general right of the public to use it for the purpose of travel, with horses, carriages and on foot, remain unimpaired.

The change effected by said act is, the general public, in consideration of the payment of certain tolls, is relieved from the burden of keeping it in repair, and the duties which, in this respect, before belonged to the commissioners of highways and other local officers, is transferred to the plank road corporation.

But these local authorities are not thereby ousted of their jurisdiction in respect to encroachments upon highways thus used by plank roads.

The general public and adjoining proprietors have an interest in having a highway remain of the breadth originally intended, and in its continuing of a uniform width, and the commissioners of highways, as their official agents, are charged with the duty of instituting proceedings to remove all encroachments.

Where a board of trustees of an incorporated village are invested with the authority "to exercise the powers and duties of commissioners of highways of towns within the limits of the village, &c., so far as these powers and duties are consistent with other parts of the act, and are applicable to the village," and there is no provision in the act requiring such board to notify proprietors to remove structures encroaching upon the streets of the village, *it seems*, such board may proceed to remove such structures without giving sixty days' notice as is required of commissioners of highways.

The failure by the commissioners of highways to cause a public highway, long in use, to be opened to its full statute width for a period of thirty years, does not operate to extinguish the rights of the public to the parcels not so opened and worked.

The statute requiring highways that have been laid out, to be opened and worked within six years, applies only to those cases where there has been a failure to open and work them at all, and not where the highway has been in full use for the whole time, though not in all places opened to its full width.

APPEAL from an order of the Supreme Court reversing a judgment for the defendants, rendered on a verdict, and granting a new trial, the defendants giving with their notice of appeal the stipulation for judgment absolute in case they should be unsuccessful, according to the statute.

The action was in the nature of trespass *quare clausum fregit*, for taking down the street fence of the plaintiff's lot, in front of his house in the village of Weedsport, Cayuga county, and removing certain trees within his inclosure.

The defendants justified as trustees of that village, under an order of the board of trustees, in terms directing that Seneca street, on the east side of which plaintiff's premises were situated, be opened "in accordance with the earliest survey thereof on record." The order defined with precision the line of the street across the lot of the plaintiff, and of three other adjoining proprietors of lots, as claimed by the trustees, cutting off from 2½ feet to about 6½ feet of the front of each lot, and making the line of the street across those lots straight. The order directed the change to be made within thirty days after the service of notice upon the proprietors, but proposed a longer time in case the owners would sign a written agreement to remove their fences within the extended time. The order was served on the plaintiff by reading it to him; but he neglected to sign the agreement or remove the fences. The other proprietors removed their fences to the new line, upon which the defendants, the president of the village, two of the trustees and the police constable, took down the plaintiff's fence, which was of posts and boards picketed and painted, and about eighty feet long, dug up three or four fruit and ornamental trees and some currant bushes, leaving them, however, in a condition to be again planted.

The defendants gave in evidence, from the book of town records, an order of two commissioners of highways of the town of Brutus, purporting to have been made in December, 1822, recorded the 16th day of January, 1823, and purporting to be the "alteration of a road that leads from James Raynor's to Weed's basin." It states the termini, and the courses and distances of the road as altered.

The evidence at the trial, in addition to the facts already stated, related principally to the location of the road according to the order of the commissioners, and tended to show that the line as fixed by the board of trustees, corresponded with the order of the commissioners. It was shown that the highway or street in question had, for several years before the trial, belonged to and been used by the Auburn and Cato Plank Road Company.

It was proved that at the time of making and recording the alteration in 1823, there was a fence in front of the plaintiff's lot on the same line as the one taken down by the defendants, and that a fence had been continued on the same line until the commission of the alleged trespass. The west side of the road or street, at that point, was not fenced and had not been for several years prior to the trial. When the road was planked by the plank road company, about ten years before the trial, the traveled path so planked was placed four or five feet nearer the plaintiff's fence than before.

The questions of law were raised by sundry requests to charge, which were refused, and by the charge actually given, the plaintiff excepting to such rulings as were unfavorable to him. The plaintiff's points were: 1. That as the road belonged to the plank road company, the defendants had no jurisdiction or control over it. 2. That the record of the road given in evidence was of no validity, for the reason that such road had not been opened and worked substantially as laid, within six years after the recording. 3. That if it were conceded that the fence and trees which were removed were in the road, the defendants had failed to show any authority to remove them. 4. That to justify themselves, the defendants should have served a notice to open the road or to remove the encroachments, in substance the same as that required of commissioners of highways in such cases. 5. That the defendants cannot justify their acts under the powers conferred upon them as commissioners of highways.

These points, except the last, were virtually overruled in the charge as given, which was, in effect, that the case turned upon the question whether the plaintiff's fence was an encroachment upon the highway as duly laid out. The judge, however, held that the defendants could not justify as commissioners of highways.

*William B. Mills*, for the appellants.

I. The defendants had all the rights, powers and duties of commissioners of highways for the village.

"It shall be the duty of trustees, and they have the power to exercise the powers and duties of commissioners of highways of towns within the limits of said village." (Laws of 1857, vol. I, 645, § 18.)

"To prohibit the incumbering of the sidewalks and streets of said village, and to cause buildings and other structures encroaching thereon to be removed, at the expense of the owners thereof." (Id., 642, § 28, sub. 2.)

"To determine the existence of a public nuisance in any part of the village, and to compel its removal or abatement, and if not done within such time as the trustees may allow therefor, to cause the same to be removed or abated at the expense of the village." (Id., 646, § 28, sub. 5.)

II. Defendants were authorized to remove any encroachment upon the highway, without resorting to an action for penalties. (*Penrudoch's Case*, 5 Coke, 101; *Hart* v. *Mayor of Albany*, 9 Wend., 572, 584, 593, 607; *Estes* v. *Kelsey*, 8 Wend., 555; *Galatin* v. *Gardiner*, 7 Johns., 106; *James* v. *Hayward*, 3 Croke, ch. 184; *Ring* v. *Russell*, 6 East, 427; *McFadden* v. *Kingsbury*, 11 Wend., 667.)

1. The power given by statute to complain of encroachments, and, if not removed, to prosecute for penalties, is merely cumulative, and does not take away the common law right of summary removal. (*Wetmore* v. *Tracy*, 14 Wend., 250.)

2. In this case the powers of the defendants are extended by statute to the right of removal in express terms, and the court says, that when trustees of a village are acting as street commissioners, their acts for the public good should be viewed with indulgence. (*Graves* v. *Otis*, 2 Hill, 246.)

3. Length of time of the continuance of an encroachment gives no right, for the continuance of a wrong can never make a right. An individual may be estopped from asserting his right, but the public, never. (*Mills* v. *Hall*, 9 Wend., 315; *Fowler* v. *Sanders*, 2 Croke, 446.)

III. The road as laid out is a public highway until it is lawfully discontinued or removed. (1 R. S., 513, § 54, 4th ed., 66.)

Traveling upon another track does not abandon the true line, but the public may at any time return to it. (Angell on Highways, § 224.)

The public are entitled not only to a free passage along the highway, but to freely pass over any portion of it. (Angell on Highways, § 226 ; Hawkins' Pleas of the Crown, ch. 76, § 49.)

Where a highway has been laid out and established of a certain width by statute, the public are entitled to the full width, though not all opened and prepared for travel. (Angell on Highways, § 232 ; *Commonwealth* v. *King*, 13 Metc., 115 ; *Harrow* v. *The State*, 1 Iowa, 439.)

IV. All roads laid out, altered or discontinued between 1805 and 1826, of which there is a record in the office of the town clerk, signed by two commissioners, are declared by statute to be legal highways. (1 R. S., 520, § 112 [1st ed., § 98], § 115 ; *Parker* v. *Van Houten*, 7 Wend., 145.)

The street in question is the oldest and most traveled of any in the village, and it will hardly be claimed that there is no street there.

What we understand to be claimed is, that the street is not, at the place in question, of the legal width. It is a right of way, either by usage merely, or else it is a legal highway according to the statute, and of the width required by law, which at that time was not less than four rods. (2 R. S., 277, § 22.)

V. A road laid out under, or declared to be a highway by statute, is a legal four rod road, and the public have a right to the use of it for the full width at any time, and anything which interferes with that right is an obstruction of and encroachment upon the road. (2 R. S., 277, § 22, as above ; 1 R. S., 520, § 112 ; *Harlow* v. *Hummiston*, 6 Cow., 189 ; *Wetmore* v. *Tracy*, 14 Wend., 250 ; see other cases under second point.)

VI. All the public streets in the village are, by the charter, declared public highways, subject to the rights and duties of any incorporated company to keep them in repair and take toll thereon. (Laws of 1857, vol. 1, p. 660, § 68.)

The road in question was therefore as much under the control of the defendants for all other purposes as any road in

the village.  Except keeping the line of travel in repairs, it was in the care of the defendants.  If not, nobody had any power over it, except to the limited extent of the powers of a plank road company, and no one could require walks to be built, or anything else done to it.  But the statute, as above, has expressly provided otherwise.

VII.  A highway duly laid out, and not opened and worked within six years,  *  *  *  shall cease to be a road for any purpose whatever.  (1 R. S., 521, § 99 [4th ed., § 113].)

The respondent claims that under this section the whole of the road must be opened and worked, and of the whole width, else it ceases to be a road for any purpose whatever.

It cannot be claimed that non-user of a portion, suffering an encroachment, or not opening the road to the full width, can work a forfeiture of the whole road ; yet, if this section of the statute is held to apply, and the road is to cease because not all opened, it all ceases ; for such is the language of the statute.  The statute can have no rational meaning except that where there is no part of the road opened and worked within that time, the whole thing is deemed abandoned, and it " *ceases to be a road for any purpose whatever.*"

1. Except for that statute, a road laid out and recorded, but not used for twenty years, still continues a highway, and does not revert to the original owner ; and not opening and working it does not divest the public of the right to open and use it as a highway. (*Henshaw* v. *Hunting*, 1 Gray, 203.)

2. Every road laid out by statute is of the legal width of four rods. (*Harlow* v. *Hummiston*, 6 Cow., 189.)

3. Showing the record, and that the road was opened and used as a public highway, was all that was necessary for the defendants. (*Sage* v. *Barnes*, 9 Johns., 365.)

VIII.  If the road was opened, used and worked substantially as laid out within six years, though not of the entire width, it became and continued a highway of full width, and defendants were authorized to open it of that width, and remove obstructions therefrom. (Bishop on Highways, 62 ; Jenkins on Highways, 57.)

It is a road, either by statute or prescription. If by statute, it is of statute width — four rods; if by use, it rests entirely upon the facts of use without survey, except it is surveyed as a road by prescription.

If the doctrine contended for be true, that the road must be opened, used and worked the whole width, to make it a legal road, no legal roads can be found; for if sufficient width for present use is opened and worked, it is as much as is ever done in almost any case.

If not opened so as to be a road by statute, it " *ceases to be a road for any purpose whatever,*" and hence, cannot be a road at all.

The argument therefore is, that we have no road at all, unless the whole width is " *opened and worked* " within six years. It is not simply that it shall be opened the whole width, but opened and worked. The two conditions cannot be separated, and no one can claim that the whole length and breadth of the road must be worked to make it a legal road.

It must be worked so far as it needs working; opened so far as the public for the time being demand it; and if it is not opened and worked within six years, it is reasonable to suppose it abandoned, and the statute so declares it.

IX. The statute in relation to encroachment, is an argument which is conclusive upon the questions whether the road must have been opened and worked to the full width.

The commissioners are authorized to order the fences removed, so that the road " *may be of the breadth originally intended.*" Not of the breadth originally opened, used or worked, but the breadth originally laid out and intended to be. (2 R. S., 521, § 103, 1st ed.)

The language of that section is such as to show conclusively the legislative intent, and to give a legislative construction of section 99 (113, 4th ed.), the same as Bishop and Jenkins have given it, and the only one consistent with common sense.

It is not possible in any case, to show that a road of a few years' standing was ever opened, used and worked as laid

out, in all its length and breadth. Human testimony is not certain enough, with the means of knowledge incident to the subject, to establish the fact if true, or to controvert it if not.

The argument in this case then goes to the question, whether we have any roads laid out and opened according to statute, or whether other proof than what the statute requires will be required, and which the nature of the case will not admit of being made.

We say, on the contrary, this road was duly laid out, opened and worked, according to the statute, is a road of statute width, and anything within its bounds is an encroachment upon it, and the defendants were authorized and required to remove it as they did.

*W. Porter*, for the respondent.

DENIO, Ch. J. The first question which arises in this case is whether the change of the highway into a plank road has taken away from the local magistrates the authority which they would otherwise have had to cause encroachments upon it to be removed. I assume that the Auburn and Cato Plank Road Company was a corporation created under the general act to provide for the incorporation of plank road and turnpike companies. (Laws 1847, ch. 210.) One of the provisions of that act is that a plank road company may take and use any part of a public highway, for its purposes of a plank road, upon making certain compensation to the local authorities, to be ascertained in a manner pointed out by the act. (§ 26.) A road thus appropriated does not wholly cease to be a highway. The general right of the public to use it for the purpose of travel, with horses, carriages and on foot, remains unimpaired. The general public, in consideration of the payment of certain tolls, is relieved from the burthen of amending and keeping it in repair; and the duties in this respect which before belonged to the commissioners of highways and other local officers, are transferred to the plank road corporation. But I am of opinion that these local authorities are not ousted of their jurisdiction in the particulars in which their exercise would not conflict with the pur-

poses or with the rights of the plank road company, and which the public interest requires should be exercised; and especially that they are not relieved from their duties in respect to encroachments upon highways which are at the same time used as plank roads. These companies are private corporations, organized for purposes of gain to the proprietors, and are not charged with public duties except so far as such duties are imposed upon them as citizens. An encroachment upon a highway may not seriously impede the facility of traveling upon it, or affect the interest of a plank road corporation, and yet it may be of a character which ought not to be permitted to exist. The general public and the adjoining proprietors have an interest in having a highway remain of the breadth originally intended, and in its continuing of a uniform width; and the commissioners of highways, as their official agents, are charged with the duty of instituting proceedings to remove fences which encroach upon it. (1 R. S., 521.) It was not the intention of the plank road act to abolish this remedy; and the public good requires that it should reside somewhere; and yet it is not conferred upon and cannot be exercised by the plank road companies under the forms prescribed by law. The case of *Estes* v. *Kelsey* (8 Wend., 555) is not, when properly understood, hostile to these views. The turnpike road there in question, had been constructed under a legislative grant to James Le Ray de Chaumont, through unimproved lands, where there was no road before, and not upon a highway, as was the plank road in the present case. The plaintiff erected a fence within the four rods, thus narrowing the space over which travelers might pass, and rendering travel under certain circumstances more difficult, which fence was removed by the defendant, the agent of Mr. Le Ray, the proprietor of the turnpike. In trespass for that act, the question was whether the proprietor of a turnpike had a right to remove obstructions upon it, and it was held that he had. That was the only point in the case bearing at all upon the present one. The judgment does not prove that the town authorities could not have proceeded, under the general laws,

to compel the removal of the encroachment; but if it did prove that, it would not show the absence of such a right in the present case, where the highway was in existence before the plank road company was incorporated, and had never been discontinued. The remark of Chief Justice SAVAGE, that the act to regulate highways has no application to turnpikes so far as remedy is provided for removing encroachments, was not necessary to the decision of the case. If generally correct, which I am not willing to affirm, it has no applicability to a case where a plank road has been constructed upon an existing common highway, as in the present case.

The principle that a highway does not cease to be such for general purposes by being converted into a turnpike or plank road, is recognized in *Benedict* v. *Gart* (3 Barb., 459), and *The Commonwealth* v. *Wilkenson* (16 Pick., 175).

The next point to be examined is, whether, considering the plaintiff's fence to have been an encroachment upon the street or highway, the board of trustees of Weedsport had jurisdiction of the matter, and could cause it to be removed. The act of incorporation (Laws of 1857, ch. 306) has the following provisions bearing upon the question: The board of trustees have the power conferred upon them " to exercise the powers and duties of commissioners of highways of towns, within the limits of the village, except the assessment of highway labor, so far as these powers and duties are consistent with other parts of this act, and are applicable to the village." (§ 27, subd. 18.) They are also clothed with the powers " to prohibit the incumbering of the sidewalks and streets of said village, *and to cause buildings and other structures encroaching thereon to be removed at the expense of the owners thereof, &c.*

The defendants cannot justify as commissioners of highways, for the reason (if for no other) that the time allowed the plaintiff, by the order to remove the fence, was too short, the general act prescribing sixty days, whereas the notice given in this case was only thirty; and it was on this account, I suppose, that the judge at the trial overruled the

defense in that aspect of it. The defendants must therefore rely wholly on the last mentioned provision. The power seems sufficiently broad to embrace the case. No notice to the proprietors is prescribed. It may be said to be an extraordinary power and one which might be readily abused. The defendants, however, seem to have proceeded with reasonable deliberation and indulgence in the present case, by giving a notice of thirty days, and allowing a further time if the plaintiff would submit; and they did no unnecessary damage in taking down the fence and removing the trees. If the *locus in quo* had been indisputably within a known and acknowledged street, probably no doubt could be entertained but that the defendants were fully justified.

This brings me to the remaining and principal question in the case, viz., whether the place on which this fence stood was legally a part of one of the streets of the village. The defendants are not aided by the provision of the charter which enacts, "that all the public streets in the village, laid down on the several maps thereof, heretofore laid out or dedicated to public use, are hereby declared public highways (§ 68), for no maps of the village were given in evidence. Nor do I think they are precluded from claiming the premises to be a part of a street by that enactment. I agree with the plaintiff's counsel, in considering the motive of the provision to be to confer upon lands which had been dedicated to the public as ways, and had been treated as such by being laid down on the village maps in the character of streets, though never actually laid out or established by authority. But it could not have been the intention, and it is not, in my opinion, the effect of the incorporation of the village to subvert any of the existing highways of the town, or to extinguish any rights or easements which the public had acquired in highways, by force of existing laws, and under prior acts of administration. If, therefore, the site of this fence was within a legal public highway prior to the incorporation of the village, it became one of the streets of the village immediately upon its incorporation, and all the provisions of the act of incorporation at once applied to it as a street.

No question was made upon the trial touching the legality of the proceedings of the commissioners of highways of the town of Brutus, as evidenced by the record of 1823. What was then done was said in that document to be an alteration of a road. How extensive the alteration was, and whether the whole line of the road at that point was through premises then for the first time appropriated, or whether its course was changed in some less degree, does not appear, and no question upon that point was made at the trial.

If it had appeared that only the parcel of ground sought to be taken into the traveled part of the street, by the acts of the defendants in removing the fence of the plaintiff and the other proprietors, in 1858, was the whole which was included in the alteration of 1823, a question of a different character would have been presented. If, by the terms of the alteration, the only change in the preëxisting road was to add to its width the narrow strip of ground now in controversy, then, inasmuch as that land was never opened or worked during the space of more than thirty years which followed its appropriation, it might perhaps be considered as having been abandoned or become obsolete within the spirit of the statutory provision, which declares that highways laid out but not opened or worked within six years thereafter, shall cease to be roads. (1 R. S., 520, § 99; 2 R. L., 227, § 23.) But the language of the record of 1823 does not warrant this interpretation. It purports to establish a highway between the points, and upon the courses indicated, and has no reference to any former road except what may be implied from the word *alteration*. But as that word could be equally applicable if the whole width of the road opposite the plaintiff's lots were then newly appropriated, and as the contrary was not contended for on the trial, I think we are bound to treat the document as establishing a highway at that locality by appropriating a strip of land of the statute width for that purpose. The question then arises whether the failure to open and work it to its whole width for the considerable period which has elapsed has operated to extinguish the rights of the public to the parcels not so opened or worked.

The case is plainly not within the, section of the statute last mentioned. The road as an entirety has been opened and has been constantly in use as a public highway from the date of the record to the present time. Simply it has not at all places been opened for its whole width. If a highway could lose its legal character from such a cause, it is probable that very few of the roads laid out in the early settlement of the State would now exist as lawful roads. This road, though now passing through a village of sufficient population to be erected into a municipality, would long since have lost its legal existence by the neglect of the adjacent land owners to remove their fences where they encroached upon the four rods; and, so far as I can see, any person might, upon that position, lawfully fence it up, without incurring any penalty. But the argument is not that the road has altogether lost its legal character by the omission to open it to its proper width, but that it has been curtailed in its proportions, and become of irregular and varying width; that its sides, which were defined by straight lines, have become crooked and wavering. I do not think this position is sound. If a road or way be established by prescription or user, as most of the highways in England are, the public use defines the extent of the easement, and so of roads by express or implied dedication, but the highways in the central and western part of this State have generally been established by public authority, and the evidence of their extent and boundaries is contained in the public records. The public use for the purposes of travel rarely corresponds precisely with their boundaries as fixed by the record by which they are laid out and the statute applicable to the case. But the proprietors of the adjacent lands have it in their power to ascertain the limits of the road, and it is their fault if they erect their fences upon lands which have been legally appropriated for public use. The plaintiff in this case is chargeable with knowledge of the position of the center line of the road, and he knew that by statute it must be four rods wide. He neglected to remove his fence to the line of the road, and for a long course of years no notice was taken of his omis-

sion, and we may presume that neither travelers or the public, during the greater part of this time, suffered any practical inconvenience. There was a sufficient roadway for ordinary purposes. But in process of time a village has grown up, where but a few years ago there was a wilderness. It has now become important that the limits of the highways, which have become village streets, should be defined. Can the plaintiff set up the delay of the public officers in not sooner enforcing their rights. I think not.

The only statute of limitations which has any analogy to the case, is that which I have quoted, providing that highways laid out shall cease to be such if not opened and worked in six years; but that, as has been mentioned, applies only to cases where there has been a failure to open and work them at all, and not where the highway has been in full use for the whole time, but its width has been contracted by the fault of the land owners to remove their fences far enough back. *Nullum tempus occurrit regi* is an old maxim of the common law, which we have inherited from our English ancestors, substituting the public or the State for the king, who, in England, represents the State. (See Broom's Legal Maxims, 27.) Its scope has been greatly abridged by modern statutes of limitations, but I know of none applicable to the present case. In *Peckham* v. *Henderson* (27 Barb., 227), the Supreme Court appears to have held, that the statute limiting the time within which the people of the State might bring an action to recover the seizin or possession of land (2 R. S., 292) precluded the commissioners of highways from removing encroachments upon highways which had existed twenty years. But I am clearly of opinion that that statute has no application to the present case. The State, in its corporate character, never had, and never claimed to have an estate or interest in the soil of this road. Certain local officers were empowered to lay out a public way, over the lands of others, and they and certain other officers were authorized to remove obstructions upon it when so laid out. There is no impleading of any person; and there is not, it seems to me, anything in the language or the policy of that

act which can be held to regulate the time within which an act, purely ministerial and administrative, shall be performed.

The position taken in the opinion of the Supreme Court, that it was not shown that there was the certificate of twelve freeholders to the laying out of the road, in 1822, nor that compensation for the damages had been made, was not taken at the trial. If it had been, it might, perhaps, have been shown, if necessary, that these conditions had been performed. But after the lapse of more than thirty years, and the acquiescence of the proprietors of the land, such an objection cannot now be sustained. It may be answered that the acquiescence did not extend to the small piece of land on which the plaintiff's fence stood. The acquiescence was, however, in a highway as assumed to be laid out by the commissioners, and the record showed the dimensions of that road.

The jury having found that the plaintiff's fence was an encroachment on the highway as laid out, thus determining the question of fact upon which the controversy depended in the defendants' favor, I think the judgment at the circuit should not have been disturbed. I am therefore in favor of reversing the order appealed from, and of affirming the judgment rendered on the verdict.

All the judges concurring,

Judgment on the verdict affirmed.