HARRIET M. ELMENDORF, RESPONDENT, v. THE CITY OF ALBANY, APPELLANT.

*Turnpike — right of a city to lay sidewalks on, and collect the expense thereof by assessment.*

Where the charter of a municipal corporation authorizes it to repair the streets and sidewalks thereof, and collect the amount by assessment, it may cause repairs to be made to a sidewalk along and upon land owned by a turnpike road within the limits of the city, and may assess the expense thereof upon the owners of the lands abutting thereon.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

*S. W. Rosendale*, for the appellant.

*Edward J. Meegan* and *John M. Kimball*, for the respondent.

BOARDMAN, J. :

By the Laws of 1870, chapter 139, the boundaries of the city of Albany were extended so as to include about one mile of the Albany and Bethlehem Turnpike Company's road. On this piece of road the plaintiff resided and still resides. It is conceded that the turnpike road is private property, in the sense that it is absolutely owned and maintained by the company, and tolls charged for passing over it. It was chartered by the Legislature in 1804.

In pursuance of the provisions of its charter the defendant caused certain repairs to be made to sidewalks along this turnpike road, and along lands of the plaintiff abutting upon said turnpike, and an assessment therefor was made against the plaintiff for $70.93. The plaintiff thereupon brought this action to set aside such assessment, and to enjoin the defendant from enforcing it. The foundation of the action is placed upon the fact that the turnpike road is private property, and that the city has no legal right to make improvements upon private property. Hence it is claimed its action is illegal and void. If this road is private property, and not one of the streets of the city of Albany, the defendant had no right to enter upon it for the purpose of constructing sidewalks or other public improvements. If it is not private property, or is a street of said city, the action of the city officers was right, and this action cannot be maintained. (*In re Rhinelander*, 68 N. Y., 105.)

In a certain sense the Albany and Bethlehem turnpike road was private property. The company, we may fairly infer, was the absolute owner of the roadway. It maintained the road, and charged to, and received tolls from, such persons as passed over it. Its franchise was derived from the State, and was exclusive within its limits. But, in the language of the chancellor, in *Rogers* v. *Bradshaw* (20 Johns., 742), "a turnpike is a public road or highway, in the popular and ordinary sense of the words; and in that sense the Legislature are to be presumed to have employed them. Turnpike roads are in point of fact the most public roads or highways that are known to exist, and in point of law they are made entirely for the public use." * * * Again, "there is nothing, therefore, in a turnpike road that should exempt it from coming under the description of a public road or highway." This language was used when the Legislature had authorized commissioners to discontinue or alter any part of a public road or highway. By virtue of such power they discontinued a portion of a turnpike company's road and located it elsewhere. It is true a great public work was the occasion for this action. Still it was a delegation by the Legislature to special officers of a power, the exercise of which, in the manner stated, was held to be legal and proper.

In the present case the Legislature gave to the municipal authorities a similiar power which has been exercised with little, if any, interference with the rights of the turnpike company for the public benefit. In *Quinn* v. *City of Paterson* (27 N. J. Law R., 35) a different opinion is intimated. But an examination of the case shows the injury complained of was done outside of the turnpike property, and on the private grounds of the owner. In *State* v. *City of New Brunswick* (1 Vroom. [N. J.] R., 395), the right of the defendant to make the improvement upon the property of the turnpike company, and assess the expense thereof, is fully sustained. This case upon appeal was affirmed in 3 Vrooman, 548, Chief Justice BEASELEY taking the same view of the rights of the city with the court below. But the case can hardly be considered an authority, since the decision was finally put upon the conceded fact that the avenue in question was one " of the public recognized streets of said city." It was thereby brought within those cases in which the public street antedated the turnpike or plank-road company, and the latter only obtained a qualified easement in the street. (*Bagg* v. *Detroit*. 5 Mich., 337; *Walker* v. *Caywood*, 31 N. Y., 51.)

It would seem, therefore, upon authority, that the acts of the defendant in this case were legal and valid. But upon principle it is equally conclusive. The charter of a turnpike road is for the public use and benefit. Though the company may acquire title to the soil, it is not an exclusive right. It is subordinate to public rights for all purposes not inconsistent with its general ownership and franchise. The rights of foot passengers are as much entitled to consideration as those of carriages. The public welfare may require provision to be made, and so long as this may be done without injury to the private rights of the turnpike, it is lawful and proper. The authority given by the defendant's charter is to be exercised for the public good. Every reason may exist why it should be exercised in the present instance, as well as in other clear cases. The duties of the turnpike company relate specially to the road-bed. They owe no duties to the public in respect to sidewalks for foot passengers.

Under such a state of facts there is no inconsistency in the action of the two corporations. A road made for the use of, and

used by the public is made still further useful by the aid of side-walks. The Legislature, by the general authority given in defendant's charter, has permitted the defendant to make such improvements in all of the streets in the city. By the same authority water and gas-pipes are laid down in the street in question. Residences are built upon it. In all respects, except tolls, it is used and enjoyed by the public as are other streets. Nor does there seem to be any reason in the principles of law, or in common sense, why the defendant may not exercise all the powers conferred upon it for the public good over this turnpike, not inconsistent with its private property in the road-bed and its franchise to take tolls. The easement or right of way is of a public character, and to the extent that it is public may be improved at the expense of adjoining owners in the same manner as any other public streets of the city.

For these reasons, we think the judgment should be reversed and a new trial granted, costs to abide the event.

LEARNED, P. J., and BOCKES, J., concurred.

Judgment reversed and new trial granted, costs to abide event.