ANN CURVIN, Respondent, *v.* ROCHESTER RAILWAY COMPANY, Appellant.

*Construction of a grant to operate a railroad on a street in front of the licensor's land — incorrect monumenting of a street by a city surveyor — ineffectual except by way of estoppel.*

An owner of premises on a highway signed the following instrument : " For value received, I hereby grant to the Rochester Railway Company the right to construct, maintain and operate a double-track railroad upon Plymouth avenue, from the bridge over the abandoned Genesee Valley canal to the southerly end of Plymouth avenue, such railroad to consist of a single track upon each side of the roadway, and to be operated by electricity as motive power."

*Held,* that such instrument gave no right to the railroad company to lay and operate a railroad beyond the limits of the street therein referred to :

That such instrument must have such practical operation as the case permitted of, and if there could not be two tracks in front of the premises of a person signing such instrument, the railroad company must be content with one, and if that one could not be laid outside of the traveled track of the highway it must be laid on the traveled track thereof, or the company must forego the privilege of laying any track at all over such portion of the road ;

That said grant was not a grant of land, nor of an easement in lands, outside the limits of Plymouth avenue ; it was the grant of an easement in said street in addition to that involved in its use as a highway, or the consent by the signers thereof to impose an additional burden upon the land constituting the street, to that already existing in favor of the public.

Where the surveyor of a city in locating a street planted his monument at a point where he thought it would be well to have the boundary thereof, without the sanction of record, monument or tradition, no effect can be claimed for such location, except by the aid of estoppel.

APPEAL by the defendant, Rochester Railway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 24th day of April, 1893, upon the decision of the court, rendered after a trial

at the Monroe Special Term, restraining the defendant from maintaining and operating its railway and cars over certain premises.

*Theo. Bacon,* for the appellant.

*T. D. Wilkin,* for the respondent.

DWIGHT, P. J.:

All the rights of the parties which are at issue in this action depend upon the effect to be given, as against the plaintiff, to an instrument in writing, executed in July, 1890, under their hands and seals, by a large number of property owners on both sides of Plymouth avenue, among whom was the plaintiff, of which the following is a copy:

"For value received, I hereby grant to the Rochester Railway Company the right to construct, maintain and operate a double-track railroad upon Plymouth avenue, from the bridge over the abandoned Genesee Valley canal to the southerly end of Plymouth avenue, such railroad to consist of a single track upon each side of the roadway, and to be operated by electricity as motive power."

All the other facts making up the narrative which follows are of importance, only, as descriptive of the situation in which the parties and the premises stood at the time the instrument was executed by the plaintiff.

Her premises, consisting of about three-quarters of an acre of land, are included in the southwesterly angle of what were formerly two highways in the town of Gates, one of which, known as the River road, ran along the west bank of the Genesee river, in a direction nearly north and south, and the other, beginning at the west line of the first, ran therefrom in a direction nearly west, the two inclosing the angle above mentioned. Both were duly laid out and recorded in the town clerk's office as roads four rods in width. Several years before 1890, the limits of Rochester being extended in a southerly direction, both of these highways were adopted as streets of the city — the River road as an extension of Plymouth avenue, and the other highway under the name of Brooks avenue; but this was done without any proceedings on the part of the city to acquire the right to appropriate any land of the plaintiff used for that purpose, or the payment to her of any compensation for such use.

Opposite the premises of the plaintiff the river makes a bend to the eastward, and the effect of its current — strong and rapid in seasons of high water — had been gradually to encroach upon its left, or west, bank until it had worn away the entire width of the River road, as originally laid out, and pushed the track of the highway, as used by the public, more and more on to the premises of the plaintiff, until, before the year 1890, it had come to be wholly on those premises throughout their entire frontage on the River road.

Sometime before 1890 the State built a retaining wall, covering the whole of that frontage, along the west bank of the river, which put a stop to the encroachments of the stream. This wall fixed permanently the extreme eastern boundary of the land available for use as a highway, and at that time the western edge of the traveled track in actual use was within about twenty feet of the buildings on the plaintiff's lot.

Some time before 1890, the city surveyor undertook to "establish" the lines of the two streets, Plymouth and Brooks avenues, at the corner of the plaintiff's premises, and he indicated what he chose to regard as the intersection of the west line of the former with the south line of the latter by a stone monument planted in the ground four feet outside of each line as so located by him. All this was done without the consent and, so far as appears, without the knowledge of the plaintiff, and no change in the use as a highway of either of the streets followed such location, but the west line of the traveled track of Plymouth avenue continued to be, as before, twenty feet easterly from the plaintiff's buildings. No sidewalk was ever laid out on the Plymouth avenue side of the lot.

In the year 1890 a movement was made by the defendant to extend one of the lines of its electric railroad through the southerly part of Plymouth avenue, and the consents of a sufficient number of the property owners on that street were obtained for that purpose in the form of grants as given above, and this was the purpose of the instrument signed by the plaintiff.

It is very apparent that this instrument was not to be taken literally in respect to the plaintiff and her premises. There could be no double-track railroad on Plymouth avenue along her premises with a single track on each side of the roadway. There was barely room on the street west of the retaining wall, as occupied by the

public, for the meeting and passage of teams. It is evident that the form was devised for use in obtaining the consents of property owners where there were such on both sides of the street and where the street was of something like the regular width.

One other fact or series of facts is found by the trial judge which, though of later date than the execution of the grant, seems to be regarded by the defendant as of importance as bearing upon the construction to be given to that instrument as executed by the plaintiff. It appears that in September, 1891, the plaintiff joined with other property owners on Plymouth avenue in a petition to the common council for an improvement of that portion of the street which included the plaintiff's frontage, by the laying of an asphalt pavement on its roadway. An ordinance was accordingly passed for the improvement of that portion of the street described " by the construction of an asphalt pavement therein, with a line of Medina stone curb on each side thereof. * * * Width of main roadway between curb lines to be generally twenty-five feet; " and the pavement was laid accordingly. When the curb line was first located on the west side of the roadway, it was placed on a line nearly four feet further to the west than the westerly line of the roadway as it had been used by the public; but, upon the objection of the plaintiff, that location was changed and the curb was finally set substantially on the westerly limit of the public use.

The defendant laid its track and set its trolley poles west of the curb as finally located, and wholly outside of what had ever been used by the public as a street, thus occupying substantially the whole of the small remainder of the plaintiff's land which the action of the river and the user of the public had left to her on the east side of her buildings. This is the continuous trespass of which the plaintiff complains in this action and which the judgment appealed from restrains.

We are unable to see that the facts embodied in the foregoing narrative constitute a defense to the action, or indicate any error in the conclusions of law found by the court, at Special Term, substantially as follows:

That the action of the city authorities in assuming to locate a west boundary of Plymouth avenue did not have the effect of a practical location and did not affect the rights of the plaintiff; that the land

lying between the west curb of the roadway and the plaintiff's buildings is no part of the highway nor of the street known as Plymouth avenue; that the poles and track of the defendant are on the premises of the plaintiff, and that she is entitled to the judgment of the court restraining their use in that place, and requiring their removal therefrom.

The defendant relies upon the grant executed by the plaintiff. But there is no room to contend that this grant gave any right to lay and operate a railroad outside the limits of the street. The language is, " upon Plymouth avenue   *   *   *   upon each side of the roadway." So that it really became the only question for the court, " where was the westerly limit of Plymouth avenue at this time?" Originally it was east of where the retaining wall is now, and as the street was washed and worn away it was moved, by the necessary use of the public, further and further to the westward, but was never moved beyond the limit of the actual use. ( *Walker v. Caywood*, 31 N. Y. 51–63 ; *Wakeman* v. *Wilbur*, 21 N. Y. St. Repr. 556.) Here the finding is, and the evidence shows, that the actual use by the public never extended beyond a line twenty feet from the buildings. Indeed, the evidence shows that this space, of twenty feet in width, was occupied by a bank, with a rise of about two feet from the edge of the roadway to the buildings, and that the defendant cut away and leveled down this bank to make room for its tracks. Clearly this space had not become a part of the street by user.

Equally unfounded is the contention that it had become so by practical location, namely, by the action of the city surveyor or other city authorities in assuming to locate the boundaries of the two streets at their intersection. So far as appears this action was wholly arbitrary and gratuitous. The surveyor seems to have planted his monument at a point where he thought it would be well to have it, without the sanction either of record, monument or tradition. Of course no effect is to be claimed for such a location except by the aid of an estoppel, and there is no evidence whatever in this case upon which to base the claim of an estoppel. It is not even made to appear that the plaintiff knew that the stone was planted, and if she did she was not taken into the counsels of the city surveyor, nor informed of the purpose or significance of the act.

Neither is there any room in this case for the argument *ex necessitate*. As we have said, it is plain that the form of this grant was not devised for this particular case; it was never intended to lay two tracks, one on each side of the roadway, in this part of Plymouth avenue. It is evident that a general form, made use of in procuring the consents of property owners on both sides of the street, where it was of ordinary width, was also used in the case of the plaintiff, and it must have in her case such practical operation as the case permits. If there cannot be two tracks at this point the defendant must be content with one, and if that one cannot be laid outside the traveled track of the highway, it must be laid on the traveled track, or the defendant must forego the advantage of laying a track at all over this portion of the road. The grant received from the plaintiff was not a grant of lands nor of an easement in lands outside the limits of Plymouth avenue. It was in her case as in that of all the other property owners, the grant of an easement in the street additional to that involved in its use as a highway; in other words, their consent to impose an additional burden upon the land constituting the street.

We think the judgment was entirely correct and must be affirmed.

LEWIS, HAIGHT and BRADLEY, JJ., concurred.

Judgment appealed from affirmed, with costs.