fraudulently. Aside from the question of fraud, it seems a fair presumption that, if a person 86 years old is of unsound mind, such incompetency would continue to exist. Taylor v. Pegram, 151 Ill. 106, 37 N. E. 837; Wright v. Wright, 139 Mass. 177, 29 N. E. 380. And the testatrix in 1900 could no more make a valid gift than a valid will. In re Rogers, 10 App. Div. 593, 42 N. Y. Supp. 133, affirmed in 161 N. Y. 108, 55 N. E. 393; Riggs v. Society, 95 N. Y. 503; Schouler, Wills (3d Ed.) § 65.

The second ground of demurrer is that the court has not jurisdiction of the subject of the action. That the plaintiffs may possibly have an adequate remedy in another court, and therefore this court will not entertain jurisdiction, does not show, in fact, that this court has not jurisdiction of the subject of the action. The subject of the action appears to be the fraud of the defendant, and, while it is the rule that equity has no jurisdiction in cases of fraud used in obtaining a will (Bisp. Eq. [6th Ed.] § 199), such fraud is not the only fraud alleged. There is no question but that a court of equity has jurisdiction in the case of a fraudulent transfer of personal property, and, as the complaint shows such a transaction, the demurrer on the ground of lack of jurisdiction is bad in part, and cannot be sustained. Lord v. Vreeland, 24 How. Prac. 316.

The third ground of demurrer, that there is another action pending between the same parties for the same cause, is unwarranted, as no such fact appears on the face of the complaint. Demurrer overruled, with costs, with leave to answer over on the usual terms.

Demurrer overruled, with costs, with leave to answer over on usual terms.

---

(37 Misc. Rep. 223.)

FAYETTEVILLE & S. RAILROAD & TURNPIKE CO. v. VILLAGE OF FAYETTEVILLE et al.

(Supreme Court, Special Term, Onondaga County. February, 1902.)

1. TURNPIKE—CHANGE OF GRADE—LEGISLATIVE AUTHORITY.

Where a turnpike road company was authorized by the legislature to convey portions of its road to a plank-road company, and conveyed a certain portion to plaintiff, which ever since used and maintained the same, while it is to be protected from interference in its rights, the legislature, under its police power, may compel a change of grade of the turnpike, and may confer such authority on local municipal agents in whom is vested the governing power in their own localities.

2. SAME—POWER OF VILLAGE.

Under Village Law, art. 5 (Laws 1899, c. 414), defining streets, and giving the board of trustees of a village exclusive control over streets and bridges, and providing that, if the village has exclusive control of a street or bridge therein, it may change the grade thereof, though a village has power to provide for the change of grade of a turnpike in a proper manner, it cannot, without notice to the turnpike corporation, enter upon the road, and change the grade without notice, and leave it in such a condition that a considerable sum will be necessary to place it in proper repair.

3. SAME—DAMAGES.

Where a village without notice changes the grade of a turnpike, and leaves it in such a condition that it appears unfit for use, it is liable to the turnpike company for resulting damage.

Action by the Fayetteville & Syracuse Railroad & Turnpike Company against the village of Fayetteville and the Syracuse & Surburban Railroad Company, to enjoin them from further interference with plaintiff's turnpike road.   Judgment for plaintiff.

B. A. Benedict, for plaintiff.
Clarence W. Austin, for defendant village of Fayetteville.
Gill & Stilwell, for defendant Syracuse & Suburban Railroad Co.

ANDREWS, J.   In the year 1800 the Seneca Road Company was incorporated (Laws 1800, c. 78) for the purpose of establishing a turnpike from Utica to Canandaigua.   In pursuance of this statute the portion of the turnpike extending from the present village of Fayetteville to the present city of Syracuse was built upon the old state road, and seems to have been operated at an early date.   In 1847 the corporation was authorized to sell sections of its turnpike road to plank-road companies (Laws 1847, c. 210), and thereupon it did convey the portion above mentioned to the plaintiff, which has ever since used and maintained the same.   The village of Fayetteville was incorporated by chapter 284 of the Laws of 1844.   It was later reincorporated under the general village law (Laws 1870, c. 291), and is now governed by chapter 414 of the Laws of 1897, which superseded the act of 1870.   The turnpike in question passed through the center of the village, and became one of its principal streets.   It is largely used by the public, and it is connected with other village streets necessary for the accommodation of the people.   It is known as "Genesee Street."   In 1895 the Syracuse & Suburban Railroad Company, desiring to build an electric railroad from Syracuse eastward, obtained the consent of the village authorities for such construction along this turnpike road through the village, and in 1897 it obtained the consent of the plaintiff to its use.   Under the village franchise the rails of the electric road were to be laid flush with the surface of the streets over which they passed.   As a matter of fact, however, with the consent and approval of the village, the rails on Genesee street, from the Beard Block westwardly to the village line, were laid some inches above the old grade of the turnpike.   Thereafter the turnpike company raised their road so as to conform to the grade of the rails, and it must, I think, be assumed that under the circumstances this was done rightfully, and with the consent of the village.   Some time during the year 1900, and prior to October 15th, the village authorities, by resolution, assumed to change the grade of Genesee street between a bridge and the westerly line of the village, and to establish a new grade for such portion of the street.   No copy of these resolutions seems to have been served upon the plaintiff, and no notice was given it to conform to the grade as established.   On October 15, 1900, the village officers entered upon Genesee street, plowed and scraped off the stone from the plaintiff's road so as to reduce it substantially to the level which it had occupied prior to its elevation to meet the grade of the railroad tracks; thus conforming it to the grade as claimed to have been newly established. The road was not, however, restored by the village to its original

condition, but its usefulness was impaired, and it will be necessary for some one to expend considerable sums thereon.. Concededly the defendant has no intention of doing this work, but argues that this obligation rests on the plaintiff.

The question was at one time raised by the defendant village that the action could not be sustained in equity because the work contemplated had been finished, but the attorney for the village in his brief states that he does not wish a dismissal of the case as to the village unless a dismissal is also granted as to the other defendant, the Syracuse & Suburban Railroad Company, which corporation does not ask for such relief. This question, therefore, will be deemed waived by the village, and will not be considered. The sole point to be determined, therefore, is as to the powers of village or city authorities over a turnpike corporation whose road passes through their limits. The answer to this question depends, in the first instance, upon the power of the legislature to regulate the manner in which the plaintiff may use its property. The old state road has not ceased to be a highway because of the rights conferred upon the turnpike corporation therein. All that was conferred upon it were certain easements. Seneca Road Co. v. Auburn & R. R. Co., 5 Hill, 170; Walker v. Caywood, 31 N. Y. 51. These easements and rights, however, constituted a property vested in the corporation, and of which, as a general rule, the corporation may not be deprived without its consent. But all property held either by corporations or individuals is subject to the police power of the state. It is subject to burdens imposed by and incident to the growth and development of the country. And if this is true of all, it is especially so of corporations which, like those created to build turnpikes, railroads, telephone, or telegraph lines, are impressed with a semi-public character, and acquire their powers by virtue thereof. Such corporations are subject to the control of the public in a much greater degree than corporations · purely private. Such is the nature of the charter granted to the Seneca Road Company. It was conferred with the knowledge on both sides that with the increase of population and with the growth of cities and villages conditions would come into existence to which property rights must yield, and when the company accepted its franchise i⁺ accepted it upon the implied condition that it should hold it subject to such reasonable burdens. It is true that the mere fact that its road should be thereafter brought within the territorial limits of a town or city would not deprive the company of its corporate rights, but to hold that such a change of condition might not take place as would subject it to some burdens from which it was originally free would be to grant to it greater rights than belong to natural persons. All owners of land over which, by the increase of wealth and population, municipal boundaries are extended, may have heavier burdens of taxation imposed upon them, and their use of their property limited and restricted in various ways. The grade of the street in front of their land may be changed, although the effect may be to greatly diminish its value. Various uses of the street are allowed which would not be tolerated in a country high-

way. The rule has never been better expressed than by Judge Shaw in Com. v. Alger, 7 Cush. 84:

"It is a well-settled principle," he says, "growing out of the nature· of well-ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it shall not be injurious to the rights of the community. All property in this commonwealth is held subject to those general regulations which are necessary to the common good and general welfare."

For a general discussion of this inherent power which resides in the legislature and the public reference may be made to the well-known cases of People v. Budd, 117 N. Y. 1, 22 N. E. 670, 5 L. R. A. 559, 15 Am. St. Rep. 460, People v. Squire, 107 N. Y. 593, 14 N. E. 820, 1 Am. St. Rep. 893, and Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77.

Governmental authority in these matters—the police power, in short—permanently resides in the state. It is inalienable. Whatever its charter, a corporation cannot be exempt therefrom; and the right to enact measures for the health, safety, and welfare of the community is never lost. Gas companies with pipes in the street have no vested rights that will prevent a change of the grade of a highway and the consequent derangement of their mains. Gaslight & Coke Co. v. City of Columbus, 50 Ohio St. 65, 33 N. E. 292. So it has been held in this state that, where a naked franchise or permit has been granted by municipal authorities for the use of its streets by a gaslight company, they are not liable for any incidental damages resulting from the making of street improvements and other public work involving the disturbance of the streets by such authorities. Gaslight Co. v. Van Vranken, 11 App. Div. 420, 42 N. Y. Supp. 339. It is so with railways in the highway. The grade of the tracks may be changed, or they may even be displaced, and the operation of the road prevented for a reasonable time, when such a course has become necessary in the course of public improvement. It is so with lines of telegraph poles, and it is so with regard to turnpike corporations. They are, of course, to be protected against a wanton or oppressive interference of their rights, but it can hardly be that, in defiance of the legislative mandate and its police regulations, they may maintain a grade that will hinder the development of cities or towns, and subject the public to great expense or inconvenience or danger.

If the legislature may so exercise its police power as to compel the change of the grade of a turnpike, it may confer a similar authority upon its local municipal agents in whom is vested the governing power in their own localities. The next question, then, to be determined is this: Whether or not such power has been in fact conferred upon the trustees of the village of Fayetteville. Article 5 of the village law (Laws 1897, c. 414) defines a street as including a highway or road which the public have a right to use, and it gives to the board of trustees of the village the exclusive control and supervision thereof. It also continues their supervision and control over such bridges as were controlled by them at the time of the enactment of the village law, but provides that in every other case public

bridges shall be under the control of commissioners of highways of the town in which the bridge is wholly or partly situated. It then provides that, "if the village has exclusive control and jurisdiction of a street or bridge therein, it may change the grade thereof." Section 159. The position of the plaintiff is that over turnpikes the village has not exclusive jurisdiction and control, and that, therefore, no power to alter their grade has been conferred upon the trustees. It is said that the duty to maintain the turnpike still rests upon the turnpike corporation; that the franchises and rights cannot be taken from it by municipal authorities; that they are not even responsible for accidents caused by defects in the roadbed. I do not think that this is the meaning of the statute in question. The key to such meaning is found in the reference to bridges, where, as has been seen, in certain cases the jurisdiction and control rests in the commissioner of highways of the town. While undoubtedly the legislature would have had power to confer upon municipal authorities the right to regulate such structures, it has not seen fit to do so. This distinction is all that the statute in question has reference to. In support of this construction reference may be made to In re Rochester Electric Ry. Co., 123 N. Y. 351, 25 N. E. 381. The question in that case was the meaning of the statute requiring the consent of the local authorities having control of the highway before a street railroad is constructed, and it was held that in the case of a turnpike the local authorities referred to were the county or municipal officers, and not the turnpike company. Notwithstanding the rights of the turnpike corporation, the administrative power of the local authorities remained unimpaired so far as its exercise was demanded for the preservation and protection of the public interests, and general supervision and control remained. A discussion having some bearing upon the question at issue is also found in Walker v. Caywood, 31 N. Y. 51. Yet it does not follow that, because the local authorities of the village of Fayetteville had the right to change or to compel the change of the grade of Genesee street by taking proper action, they could, without notice to the turnpike corporation, enter upon the road, and do the acts here complained of. The duty of repairing and maintaining this road in a proper condition still rests upon the turnpike corporation. If it fails in this duty, and the road becomes a nuisance, and imminently dangerous to travelers, the village authorities may doubtless make the necessary repairs, and recover the expense thereof from the turnpike corporation. In other cases the procedure of the village to compel suitable repair is pointed out by statute. The case at bar comes under neither of these heads, and, so far as I have been able to discover, there is no decision anywhere,—certainly not in this state,—which points out the course to be adopted.

But it seems to me that in fairness and justice to both parties, and as an orderly course of procedure, two methods were open to the village. It might, at its own expense, or possibly at the expense of the abutting property owners, acting pursuant to a proper resolution, and with no notice whatever, have lowered Genesee street, provided that when the work was completed the highway was left in substan-

tially as good a condition as before. State v. Mayor, etc., of City of New Brunswick, 30 N. J. Law, 395; State v. City of New Brunswick, 32 N. J. Law, 549,—being the same case reported in the higher court. Or, at its option, I think that the village, having properly adopted a resolution changing the grade of Genesee street, might, upon reasonable notice, require the plaintiff to lower its roadbed so as to conform to the grade as changed. If, then, there was a failure to comply with such notice, it might itself do the necessary work, leaving the corporation to repair the road and put it in proper condition. Whether, under such circumstances, the village could recover over against the turnpike corporation the value of the work done by it, or whether the latter could recover of the former the expense of the change in case it complied with the notice, or the expense of repairing the road in case it did not, need not here be decided; but at least such a procedure would prevent an unseemly conflict of authority, and would minimize the damage to be occasioned to the one party or the other. Neither of these courses was adopted by the village in this case. Without warning or notice it tore up and partly destroyed the plaintiff's road, and left it in such a condition that a considerable sum will be necessarily expended in placing it in proper repair. This act I hold to be illegal. And I further hold that the village is liable for the damage occasioned thereby. There seems to be little dispute that such damages amounted to about $180, and I fix them at that sum. In coming to this decision I do not determine the question as to the legality of the various resolutions passed by the village changing, or attempting to change, the grade of Genesee street. Nor do I consider the question as to whether the turnpike road was in a suitable condition prior to the acts of the village, except so far as is necessary to hold that it did not constitute a public nuisance which the village authorities might abate. Holding these views, I find that the plaintiff is entitled to judgment enjoining the defendants from further interference with the roadway, and for $180 damages and costs against the village. Findings may be prepared in accordance with these views, and, if not agreed upon, may be settled before me.

Judgment accordingly.