Richard S. Heller, J.
The trial of these three claims was held on June 20, 21 and 22, 1955 before Judge Stephen M.. Lounsberry, former Presiding Judge of this court. Subsequently an order was granted reopening the trial for additional testimony. Prior to that testimony being heard, Judge Lounsberry retired and the parties stipulated for the hearing of additional testimony, further trial if necessary, and determination of all issues by any Judge of this court. The further testimony pursuant to the order was heard on June 25, 1956.
The trial which was closed on June 25, 1956 was by stipulation, confined to the issue of whether or not the State had a three-rod right of way or a four-rod right of way prior to reconstruction of a portion of the highway running from Watkins Glen to Ovid in 1951.
The claimant Wagner established that by deed dated October 11, 1923 he took title to a parcel of land bounded on the east by the center line of what is referred to in the deed as the “ lake road ” which is apparently the road in question in this proceeding. This property extended along the center line of that highway north 27% degrees east. The claimant Porter put in evidence a deed dated March 26, 1907 by which several parcels of land were conveyed to the claimant and another. The first of these parcels is described as having an easterly boundary running north 26 degrees east along the highway. The highway is not further described but it is apparently the highway in question in this claim and it appears that the line described was intended to be the center line of the highway as it then existed. In another plot conveyed by the same deed there is a further reference to a boundary line running along the center of a highway south 87% degrees east. The claimant Telephone Company produced no documents of title or any instruments establishing an interest in real property.
The claimants established that for an undefined length of the highway as it existed prior to reconstruction in 1951, they had used the land lying between one and one-half and two rods from the center line of that highway for their private purposes for a great many years. They also established that other persons owning property abutting on the road had so used the land lying between one and one-half and two rods from the center line of the highway on either side thereof.
It is clearly shown that within the memory of living man the highway prior to reconstruction in 1951 was not opened or used for highway purposes to a width of more than three rods. There existed in the land lying between one and one-half and two rods from the center line of the highway such long stand *31 ing use as fences, hedging, walls, horseblocks, orchards and other crops.
In 1951 this highway was reconstructed and certain appropriation maps were filed and pursuant to appropriation maps two small parcels of property owned by the claimant Porter were taken. The maps as filed however, showed an existing right of way four rods in width and included the various uses of the property lying between one and one-half and two rods as shown by the claimants and the State’s appropriation maps and contract plans. In the course of the reconstruction the entire area extending two rods on either side of the center line of the highway and the property appropriated pursuant to the procedure provided in the Highway Law was utilized for highway purposes and opened as a public highway.
The claimant Wagner established title, to property used for highway purposes prior to the reconstruction in 1951 and an extension of that use by the reconstruction in 1951. The claimant Porter established that he has title to some portion of the property conveyed to him and another in 1907 subject to use for highway purposes which use was extended by the reconstruction in 1951. The claimant Telephone Company has established no title and no interest in real property but has simply established that it had certain poles located within the area lying between one and one-half and two rods on either side of the highway as it existed prior to 1951. Presumably this use was under some claim of right. In view of the stipulation limiting the consideration of the court on this record to the question of whether the State had a three-rod right of way or a four-rod right of way, for the purposes of this opinion, it is assumed that the claimant Telephone Company had some claim of right.
Inasmuch as the claimants had established title and long continued use the burden was then upon the State to establish the existence of its right of way in derogation of that title and use. (Rochford v. State of New York, 153 Misc. 239.) The fact that no appropriation maps were filed in regard to the strips of land 8.25 feet in width in controversy here does not defeat the jurisdiction of this court. The State has entered upon the property and deprived the owners or users thereof of that property and this constitutes an appropriation regardless of the noncompliance with the formalities of the statute. (Rochford v. State of New York, 153 Misc. 239.)
The State contends that this highway as it existed prior to the 1951 reconstruction was laid out as a four-rod highway in 1796. If this highway was so laid out as a four-rod highway but *32 opened only to a width of three rods or less, then the position of the State is undoubtedly correct. A highway may be abandoned by failure to open where it is never opened at all but where it is opened to less than the full width of the right of way, there is no loss by abandonment or otherwise of that portion of the right of way not opened. (Walker v. Caywood, 31 N. Y. 51; Mangam v. Village of Sing Sing, 26 App. Div. 464, affd. 164 N. Y. 560.)
Where a road has obtained its character as a public highway by user, the width thereof is determined by the extent to which it has been improved by the public authorities. (Beisheim v. State of New York, 39 N. Y. S. 2d 333, 339.) Where the public highway obtains its character as such by dedication, then the width is defined by the dedication. Where the location of the public road is indefinite and uncertain but there has been a user of a way answering in a general manner to the line described the user will ordinarily determine the limits and boundaries of the road. (1 Elliott on Roads and Streets [3d ed. 1911], § 441, p. 494.)
In seeking to establish a four-rod right of way the State introduced into evidence its Exhibit “ 0 ” which is a photostatic copy of a part of a book maintained in the office of the clerk of Seneca County headed “ Historical Records ” which bears a notation that the records of the Town of Ovid of which these were a part were copied from the original town records at Ovid, New York. The State contends that the description of a highway appearing on Exhibit “ C ” reciting that it was laid out by the commissioners of highways of the Towns of Ovid and Hector and purportedly signed by the three commissioners was the same highway which existed prior to reconstruction in 1951. The State also introduced Exhibit “ L ” which is a photostat of a typed record and bears the certification of the clerk of Seneca County that it is a true copy of the original record in that" office on page 49 of the town record of Ovid. One of the entries on Exhibit “ L ” sets forth that at a town meeting in the town of Ovid held on April 7,1795 three persons were elected commissioners of highways and those three persons are the same persons whose names appear at the end of the description contained in Exhibit “ C ”.
The claimants objected to the introduction of these photostats in evidence and moved to strike out of evidence those exhibits and also the testimony of the State’s witness pertaining to those exhibits. Obviously the photostats were not made from original records since in both instances the photostats show that the record was typed and the court does not require proof *33 that at the time of the actions theoretically shown to be recorded by these instruments, typewriters were not in use.
On the further hearing of this matter on June 25, 1956 the State produced as a witness an attorney who has been employed by the Town of Ovid as its attorney on a part-time basis for specific matters since 1920. This attorney brought with him a book which is described as a record of the proceedings of the Town of Ovid and was received in evidence as Exhibit “ 0 ”. This book is written in longhand and the State introduced in evidence photostats with Exhibit “ P ” being a photostat of the same record that is contained in Exhibit “ L ” of the town meeting held on April 7, 1795, and Exhibit “ Q ” is a photostat of a longhand record of the same description which is contained in Exhibit “ C ”. It developed that the book containing these records came into the possession of the witness about 1925 when it was found in the office of another attorney who had from time to time acted as attorney for the Town of Ovid. The record was turned over to the town clerk of Ovid who retained it for some seven or eight months and then asked the witness to keep the record in the bank vaults. The town clerk has no access to this vault and the book was loaned from time to time but the witness delivered possession of the book only upon receiving permission from the town clerk. The witness stated that the book had been loaned to a W. P. A. project for a period and the State’s prior witness had testified that his investigation at the Seneca County Clerk’s office established that the typed record maintained in the Seneca County Clerk’s office as “ Historical Records ” was made in the course of a W. P. A. project.
Without passing on the claimant’s motion dealing with the admissibility of this evidence and assuming that the evidence is admissible, the court must determine whether the road as it existed prior to 1951 existed by virtue of a valid exercise of the power of eminent domain or whether it resulted from user or a dedication. The court finds that the evidence does not establish the State’s right to a four-rod right of way for this highway prior to the 1951 reconstruction.
Where the sovereign takes property or seeks to assert a right to private property based upon a prior taking there must be no uncertainty in the description of the property taken or in the degree of interest acquired. (Matter of Water Comrs. of Amsterdam, 96 N. Y. 351; Raymond v. State of New York, 208 Misc. 43.) Here the most that the State could establish was that the description set forth on Exhibit “ C ” and Exhibit *34 “ Q ” followed the same general course as the highway existing between Lodi and Watkins Grlen prior to the 1951 reconstruction. The State did not establish the termini of the highway described in Exhibits “ C ” and “ Q ” and therefore made no showing at all that the existing highway prior to 1951 was the highway laid out in 1796. Certain testimony of the State’s witness indicates strongly that the location of the highway prior to 1951 was substantially différent than it had been at some previous time.
If this were simply a question of minor variations in clearly defined courses in a location established with certainty, a very different question would be presented. Such minor variations made over the course of time would generally not affect the width of a valid taking of a right of way.
Here however, the most that can be said for the State’s evidence is that the description in 1796 follows the same general courses and at no point was the State able to fix with any degree of certainty the location of any of those courses. A basic requirement in any appropriation for a right of way is that it be sufficiently definite so that a surveyor could determine the starting point and plot the route. This must be a continuing requirement where the State seeks to assert a right of greater quantity than it has actually opened and used. If the description is not of such definiteness and precision then no amount of filing can put purchasers and owners of property on sufficient notice to sustain the State’s position.
The court however, finds that there is an additional ground for denying the existence of a four-rod right of way on this record. The State’s Exhibits “ C ”, “It ”, “ 0 ”, “ P ” and “ Q ” are devoid of any authenticating proof. If they are to be admissible in evidence it must be either on the theory that they constitute ancient documents or that they are legitimate public records. Where an ancient document deals with interests in real property it is generally required that its content be supported by long continued possession to permit the court to assume the authenticity of the contents thereof. (Clark v. Owens, 18 N. Y. 434.) It also must come from the natural custodian. (Fairchild v. Union Ferry Co., 121 Misc. 513, affd. 212 App. Div. 823, affd. 240 N. Y. 666.) Here the instruments are clearly copies of original documents, they are not shown to have come from a natural custodian and because of the inability of the State to define the termini and fix the location of the descriptions there is no confirmation in terms of long continued possession.
*35 As a public document the instruments also fall short of the requirements for admissibility. Chapter 52 of the Laws of 1784 provided for the laying out and alteration of roads in Montgomery County where this property was then located. It did require that commissioners enter in writing all highways laid out and altered to be entered of record with clerks of respective towns. That statute provided for the election of commissioners of highways. That act was amended by chapter 95 of the Laws of 1887 and it was specifically provided in the amendment that commissioners should be appointed and not elected. By chapter 18 of the Laws of 1794 this property was included in Onondaga County but the above statutes apparently were applicable.
The town meeting set forth on Exhibit “ L ” and Exhibit “ P ” sets forth selection of highway commissioners in a manner contrary to the applicable statutory provision. There is no evidence as to when this entry was made in the town clerk’s records if it ever was so made. Certainly in 1925 these records were not in the possession of any public officer required or authorized by statute or by the nature of his duty to keep such a record. The fact that since 1925 the documents have been subject to the control of the town clerk cannot encompass them in the cloak of public documents carrying admissibility without some evidence as to the making and whereabouts of the records prior thereto.
This decision is limited solely to the determination that the State did not have a four-rod right of way over the property involved in these claims. It does not in any way determine the extent to which claimants may be entitled to compensation. The determination of the right to compensation can only be determined on further trial.
For that purpose an order may be made placing this case on the calendar for determination of the remaining issues.