G. Robert Witmer, J.
The plaintiffs are owners of lands in the town of Irondequoit, County of Monroe, abutting on Thomas Avenue, which runs northwesterly from St. Paul Boulevard to Stutson Street at a point near the Genesee River. They allege in their complaint herein that the defendant County of Monroe is about to widen the pavement of Thomas Avenue and use said avenue as a four-rod road; that the road is actually only three rods in width; that they bought their properties in the belief that Thomas Avenue is a three-rod road; and that if the road is widened to four rods, many beautiful, stately shade trees will be destroyed, and the beauty and residential value of the street will be greatly harmed. The defendant County of Monroe admits that it claims the road is four rods in width and that it intends to widen the pavement.
Before 1842, Thomas Avenue was established as a town road under its former name of Old Merchants Road. The County of Monroe offered into evidence Exhibit A, being an ancient book in the custody of the town clerk in the town of Irondequoit and kept by him as part of the records of said town, which book contains the old highway records of the town; and in particular the county offered into evidence as Exhibit A-l, page 68 of said book, which is as follows:
At a meeting of the Commissioners of Highways of the Town of Irondequoit in the County of Monroe at the house of Alex A. Hooker, in the said town, on the 17th day of September, 1842, all the said Commissioners having been duly notified to attend the said meeting for the purpose of deliberating on the subject of this order, it is
*143 Ordered and determined by the said Commissioners upon the application of Jacob Graves, John Greig, and Oliver Culver, that the Highway running through the farms of the said applicants (commonly called the Old Merchants Road) to be altered as follows:
Commencing at a stake 14 rods and 19 links south of the northwest corner of Lot No. 8 and in the east line of lot No. 7; thence north about 43° 30', west 02.25 chains to a black oak tree marked; thence north 19° east 30 chains to a stake on lot No. 1; thence north 1°, east 27 chains to the intersection of a road running easterly from the Genesee River through lot No. 1; and it is
Further ordered that the line above described be the center of the said highway, and that the said highway be of the width of four rods; also that the Old Merchants Road running through the said lots be discontinued.
In witness whereof the said Commissioners have hereunto subscribed their names this 17th day of September 1842.
Recorded 17 Sept. 1842 James Swayne, Town Clerk
D. C. Haight, Surveyor
Alex A. Hooker
Watson Ewer, Commissioners of Highways
Pursuant to said order of the Commissioners of Highways of the Town of Irondequoit said Thomas Avenue has been used and recognized as a highway from that time. In 1925 the County of Monroe duly took over from the Town of Irondequoit the maintenance of said Thomas Avenue.
Apparently in the early years after said highway was laid out little thought was given to its width. On the platbook for Monroe County made in 1872 and in the one made in 1902 Thomas Avenue was shown, but its width was not stated. Maps made in 1905, 1907 and 1916 also stated no width for Thomas Avenue. One map made in 1907 and one made in 1913 stated said road to be three rods wide. The Hopkins county platbook of 1924 stated that Thomas Avenue was 50 feet wide. Several maps filed in Monrpe County Clerk’s office since 1920 concerning lots on Thomas Avenue state that it is three rods wide; and a map used for general purposes in the offices of the town of Irondequoit showed Thomas Avenue to be three rods wide. Some permits for buildings issued to some of the plaintiffs or their predecessors by the Town of Irondequoit calculated the required set-backs upon the assumption that Thomas Avenue is three rods wide.
There is no indication that any of the surveyors who prepared any of the afore-mentioned maps, or that any of the recent officers of the Town of Irondequoit, ever examined the original record of highways on file in the town clerk’s office.
Since the Town of Irondequoit is no longer charged with the duty to maintain Thomas Avenue, it moved at the close of the *144 plaintiffs ’ case for dismissal of the complaint as against it upon the ground that it is not a proper party and that no cause of action was made out against it. Plaintiffs opposed the motion on the ground that if they are successful herein as against the County of Monroe, the Town of Irondequoit should be required to change its official map so as to avoid future deception and error concerning the width of Thomas Avenue. The court reserved decision on the motion. The Town of Irondequoit thereupon, countered with evidence that it has no official map. Since the latter stands undisputed, the motion of the Town of Irondequoit is granted, and the complaint is dismissed as against it.
The court feels a great deal of sympathy in the plight of the plaintiffs, but this case must be decided solely upon the basis of the established legal rights of the parties. The plaintiffs do not claim to have acquired any rights in Thomas Avenue away from the Town of Irondequoit or County of Monroe by reason of the failure of the public to use any portion of the road (see Walker v. Caywood, 31 N. Y. 51, 63-4; Mangam v. Village of Sing Sing, 26 App. Div. 464), or by reason of adverse user by the plaintiffs or their predecessors of any portion of said highway. (See St. Vincent Orphan Asylum v. City of Troy, 76 N. Y. 108.) Plaintiffs contend that the highway was never legally laid out as a four-rod road and that defendant County of Monroe is at most entitled to use only three rods for highway purposes. Since the county relies exclusively on the record of 1842 purporting to lay out Thomas Avenue as a four-rod road, the only issue before the court is, was the road legally laid out under the said order of the Commissioners of Highways, dated September 17, 1842!
By chapter XVI of part I of the Revised Statutes of 1828, the Legislature of the State of New York revised the laws of the State with respect to the manner of laying out new roads and the manner of altering existing roads. Sections 54 and 55 of title I of said law provided as follows:
“ § 54. Every person liable to be assessed for highway labor, may apply to the commissioners of highways of the town in which he shall reside, to alter or discontinue any road, or to lay out any new road. Every such application shall be in writing, addressed to the commissioners, and signed by the person applying.
“ § 55. Whenever the commissioners of highways shall lay out, alter or discontinue any road, either upon application to them or otherwise, they shall cause a survey to be made of such road, and shall incorporate such survey in an order to be signed *145 by them, and to be filed and recorded in the office of the town clerk, who shall note the time of recording the same.”
Section 19 defined the persons “liable to be assessed for highway labor ” as including “ Every person owning or occupying land in the town ”. Section 125 of title I of said law provided as follows: “ Any two commissioners of highways, of any town, may make any order, in execution of the powers conferred in this Title; provided it shall appear in the order filed by them, that all the commissioners of highways of the town met and deliberated on the subject embraced in such order, or were duly notified-to attend a meeting of the commissioners, for the purpose of deliberating thereon.”
The statute contained further provisions, to wit, section 56, that the town clerk should post a copy of the commissioners’ order after the same was filed; section 58, regarding laying out roads through improved or cultivated land; and sections 57, 59 et seq. that if the road were laid out without the consent of an owner of lands taken, it must be done after posting three notices for six days prior to hearing thereon, and appropriate procedure was set up for ascertaining the value of the lands taken and for compensating the owner therefor.
Since the record of the relocation of Thomas Avenue in September, 1842 (Exhibit A-l quoted above) constitutes all of the defendant’s evidence concerning such act, plaintiffs contend that the defendant has not established that a four-rod road was legally laid out under such order. To support their contention plaintiffs submitted evidence that two of the three applicants named in the order of September, 1842 owned land in the south half of the town lot through which Thomas Avenue runs, but that neither they nor the third applicant was owner of record of any lands in the north half of said lot through which the road runs. Plaintiffs urge therefore that defendant has not shown that the road was laid out upon consent of the adjoining owners, and that therefore defendant must show that due notice was given to persons who owned said lands, before the court may hold that the road was lawfully established by the order of 1842.
One difficulty with the plaintiffs’ argument is the assumption that under the statute of 1828 (§54) only owners of record could apply to the commissioners of highways to alter a road. The statute provided, however, that persons “ liable to be assessed for highway labor ” might apply, and such persons might be owners or occupiers. Moreover it is recognized that persons who owned lands often did not record their deeds at the time of purchase, if ever; and the fact that the County Clerk’s *146 office does not reveal that any of the three applicants were owners of record of lands in the north half of the lot does not vitiate the effect of the order. After all, it is a fact that the road was laid out on substantially the same center line which it now has and as described in Exhibit A-l. The safeguards in the statute for the protection of nonconsenting owners were available to any person aggrieved, and so far as is known none chose to assert rights thereunder. More than 100 years later, the court may safely presume that all required formalities were duly performed.
The record of the establishment of this highway is sufficient on its face to comply with the statutory requirements. It recites due notice of meeting of the Commissioners of Highways at a stated time and place and for a stated purpose. It recites the application of the persons through whose farms the old road then ran and the request that the route be altered. It describes by directions and distances the new center line of the road, and discontinues the old road. Confirming the accuracy of the description, the surveyor as well as the commissioners signed the order.
The record of the laying out of this highway was properly received in evidence. (Beers v. Hotchkiss, 256 N. Y. 41, 47-48; Fairchild v. Union Ferry Co., 121 Misc. 513, 518, affd. 212 App. Div. 823, affd. 240 N. Y. 666; Dodge v. Gallatin, 130 N. Y. 117, 133; Beisheim v. People, 39 N. Y. S. 2d 333, 344.) As was said by Chief Judge Caedozo in the Beers case (supra, p. 48): “ When we find upon the town records a report that such a meeting was held after due notice and find upon the same records a report of the results of the drawings, the regularity of the intermediate proceedings between the survey and the meeting may safely be presumed. Courts do not look at records with over-technical eyes after the healing acquiescence of a century and a half ’ ’.
When the County of Monroe took over this highway from the Town of Irondequoit for maintenance it got no more than the town had, and no less. The fact that some town officials mistakenly believed that Thomas Avenue was a three-rod road cannot help the plaintiffs. Once a highway is legally laid out, it is presumed to continue as such (Horey v. Village of Haverstraw, 124 N. Y. 273, 276), and no incidental act of an official may impair the rights of the public in such highway. (City of Mt. Vernon v. New York, N. H. & H. R. R. Co., 232 N. Y. 309, 315 et seq.; People ex rel. Sweet v. Board of Supervisors, 101 App. Div. 327.)
*147 It is held therefore that said Thomas Avenue was duly laid out as a four-rod road in 1842 and has continued as such since that time; and that defendant County of Monroe is entitled to a judgment declaring said highway to be four rods in width.
This is the decision of the court as provided in section 440 of the Civil Practice Act.
Submit judgment accordingly.