Daniel E. Macken, J.
Plaintiffs are the owners of real property abutting Thomas Avenue, a highway in the Town of Irondequoit, County of Monroe. By their complaint they seek a judgment declaring that the highway easement of Thomas Avenue is 49% feet (three rods) in width. The defendant contends that the highway is four rods wide.
The action was originally commenced against the County of Monroe, its Director of Public Works, the Town of Irondequoit and its Supervisor. On a previous trial the complaint was dismissed as to the Town of Irondequoit and its Supervisor, and by stipulation the action has been discontinued as against the Director of Public Works of the County of Monroe.
Thomas Avenue was a part of the highway system of the Town of Irondequoit until 1925 when, by resolution of the Board of Supervisors, it was made a county road and its maintenance assumed by the defendant. Shortly before the commencement of this action, the defendant announced plans to rebuild and widen the pavement of Thomas Avenue, claiming the easement of the highway to be four rods in width. Prior to that time, its width had generally been considered to be 49% feet. Several maps filed in the Monroe County Clerk’s office, beginning with one made in 1907, showed Thomas Avenue to be 49% feet in width. Subdivision maps approved by the Superintendent of Planning for the City of Rochester, then acting for the Town of Irondequoit, and showing Thomas Avenue to be 49% feet wide, were filed in the Monroe County Clerk’s office in 1921 and 1922. A subdivision map, showing Thomas Avenue to be 49% feet wide, was approved by the Monroe County Division of Planning and filed in the Monroe County Clerk’s office in 1937. A plat book in general use in the county since 1924 indicated Thomas Avenue to be 50 feet in width. Earlier plat books, while showing Thomas Avenue, did not state its width. A map used for general purposes in the offices of the Town of Irondequoit showed Thomas Avenue to be 49% feet wide. In calculating setbacks for the purpose of issuing building permits, the Town of Irondequoit assumed Thomas Avenue to be 49% *583 feet wide. Utility companies in laying their mains assumed the highway to he 49% feet wide.
By its answer and evidence produced at the first trial of this action, the defendant based its contention upon an order of the Commissioners of Highways of the Town of Irondequoit made September 17,1842, purporting to alter the course of a highway known as the Old Merchants Road and which provided “ that the said highway be of the width of four rods ”. By stipulation the record of the previous trial has been received in evidence in its entirety and made a part of the evidence now before the court. I find, as did the court upon the first trial, that the order of the Commissioners made in 1842 referred to the present Thomas Avenue. On the basis of that order, the court at the first trial found Thomas Avenue to be four rods wide. (Cobb v. County of Monroe, 7 Misc 2d 141.) On appeal the Appellate Division held that, although, if originally established as a four-rod road the highway would continue as such whether or not used to its full width (Walker v. Caywood, 31 N. Y. 51), the order of 1842 purported to be an alteration of an existing road and if it was intended thereby to widen the road to four rods, the easement in the widened portion of the road would be deemed abandoned unless implemented by use, and granted a new trial “ so that all the facts as to the width of the Old Merchants Road prior to 1842 and the history of subsequent user may be developed.” (Cobb v. County of Monroe, 8 A D 2d 755.)
Upon the present trial there was no evidence that any part of Thomas Avenue was ever used for highway purposes beyond a width of three rods prior to the commencement of this action. The evidence is to the contrary, and I accordingly find, that if the order of 1842 attempted to widen Thomas Avenue to four rods, the highway easement in the additional width contemplated by that order has been abandoned.
The defendant now bases its contention that Thomas Avenue is four rods wide upon an entry found in an ancient record book, now a part of the official records of the Town of Pittsford, and purporting to be a record of Highways, Town Meetings and School Records from 1796 to 1824. In 1806 the present Monroe County towns of Pittsford, Brighton and Irondequoit were a part of what was then known as the Town of Northfield and the area including the present Thomas Avenue was a part of that town. The entry which purports to be a record of the Town of Northfield and is dated November 5,1806, is as follows:
“ Minutes of a road beginning near the mouth of Genesee River running south and by three different courses on the banks *584 of the river two miles then south thirty seven degrees west sixty roods then south six degrees west eighty, roods then south twenty five east one hundred and eighty eight roods then south forty-two degrees east eighty roods then south five degrees west forty roods then south thirty-two degrees east twenty-eight roods then south seventy roods then south forty degrees east sixty roods then south sixty degrees east one hundred and forty roods then south seventy-four degrees east fifty four then south thirty-five degrees east twenty eight roods then south fifty (word illegible) south seventy degrees east thirty roods then south forty east sixty roods south fifty east one hundred and forty four then south seventy degrees east forty two roods south twenty five east forty roods then south ten degrees east ninety-four roods then south twenty degrees one hundred roods then south four hundred and seventy thence east forty roods intersecting a road near Wm. Thomases in the Landing Town.
Wm. Spear ( Commissioners
Oliver Culver I of Highways ’ ’
Copies of the above-quoted record of the Town of Northfield were subsequently entered in the records of the Towns of Brighton and Irondequoit.
It is the contention of the defendant that by the foregoing record the commissioners evidenced the laying out of what was then known or came to be known as the Old Merchants Road and that the present Thomas Avenue was a part of that highway and was included within that part of the description reading ‘ ‘ beginning near the mouth of Genesee River running south and by three different courses on the banks of the river two miles
Iti. support of its contention, the defendant produced one Kenneth Miller, a civil engineer employed by the Department of Public Works of the County of Monroe. After scholarly and obviously time-consuming examination of highway records of the County of Monroe and its various towns, Mr. Miller plotted what he concluded to be the course of the highway described by the record of November 5, 1806. The southerly part of the highway as so charted by him substantially coincides with the present Merchants Road. A northerly portion substantially coincides with the present Thomas Avenue.
I have little hesitancy in finding that by that part • of the description contained in the 1806 entry commencing “ then south thirty seven degrees west sixty roods ” the commissioners intended to lay out that portion of the highway known as the Old Merchants Road lying south of the present Thomas Avenue *585 and that to that extent the solid line appearing on Exhibit H-2 substantially represents that portion of the description. I also find that the present Thomas Avenue was a part of the so-called Old Merchants Road. But a determination of whether by that portion of the record reading “beginning near the mouth of Genesee River running south and by three different courses on the banks of the river two miles ”, the commissioners intended to lay out a highway encompassing the route of Thomas Avenue and, if they so intended, whether they properly and legally accomplished that purpose, presents greater difficulty.
It being conceded that plaintiffs’ record title to the fee of their respective lands extends to the center of Thomas Avenue, and having found that the easement for highway purposes has long been generally assumed to be íbree^rods wide and has not been developed or used for such purposes beyond that width, I hold that the defendant has the burden of proving that it was originally laid out of a greater width. (Porter v. State of New York, 5 Misc 2d 28; Rockford v. State of New York, 153 Misc. 239, affd. 245 App. Div. 794.)
In 1806, by the statute then in effect (L. 1801, ch. 186), all roads laid out by Commissioners of Highways were required to be “ done on actual survey” and to be not less than four rods wide. A subsequent statute (Rev. Stat. of N. Y., part I, ch. XVT, tit. I, § 98) provided that: ‘ ‘ The acts and doings of the commissioners of highways of the several towns in this state, or of any two of them, in laying out, altering or discontinuing any road or highway, since the thirty-first day of December, one thousand eight hundred and five, and prior to the fourteenth day of April, one thousand eight hundred and twenty-six, are confirmed from the last mentioned day; provided such commissioners, or any two of them shall have caused a survey of such roads or highways to be filed and recorded in the office of the town clerk of the town.”
Some indication of what was intended by filing and recording a “ survey ” is found in section 63 of the same chapter providing that having determined to lay out a highway, the commissioners “ shall make out and subscribe a certificate of such determination, describing the road so laid out, particularly, by routes and bounds and by its courses and distance, and shall deposit the same with the town clerk ”.
Presumably, the entry of the minutes of November 5, 1806 was intended as compliance with the foregoing requirements. To sustain its contention that the highway easement of Thomas Avenue is four rods wide, the defendant must establish that *586 Thomas Avenue was included in the road therein described and that the statutory requirements were met.
“Where the sovereign takes property or seeks to assert a right to private property based upon a prior taking there must be no uncertainty in the description of the property taken or in the degree of interest acquired.” (Porter v. State of New York, supra, p. 33; Matter of Water Commrs. of Amsterdam, 96 N. Y. 351, 361; Matter of N. Y. Cent. & Hudson Riv. R. R. Co., 70 N. Y. 191.) “In proceeding’s for laying out a highway * * * the application should be accompanied by a survey, or some proper description, showing distinctly the line of the proposed road, so that persons through whose lands it is to be laid out, and others interested, can determine its route.” (Matter of De Camp, 19 App. Div. 564, 565.) The requirement that a survey be recorded might be met by recording a description of the proposed road sufficient to locate it. (Matter of De Camp, supra; Attorney General v. Stevens, 1 N. J. Eq. 369.) “ The statute does not require that the courses shall be specified by the compass in degrees and minutes, and where the general course is given in the application as easterly, or westerly, etc., and where the exact course and distance can be determined from other particulars in the application, or by natural monuments referred to therein, the statute is substantially complied with.” (Emphasis mine.) (Satterly v. Winne, 101 N. Y. 218, 223.) The termini and the courses and distances, however, should be so set forth that the skill of a surveyor could at any time determine the route. (Woolsey v. Tompkins, 23 Wend. 323; People ex rel. Waters v. Diver, 19 Hun 263; Porter v. State of New York, supra.)
From a casual examination of that part of the 1806 entry claimed by the defendant to encompass Thomas Avenue, it is apparent that the description falls far short of the foregoing requirements. The record of this litigation bespeaks its inadequacy. While the defendant contends that it would be unreasonable to impose today’s standards of engineering and surveying upon highway commissioners at the beginning of the nineteenth century, ample evidence may be found in reports of cases decided in that era that it was the practice to describe roads with at least the detail required by the foregoing decisions. (Lawton v. Commissioners, 2 Caines 178; Herrick v. Stover, 5 Wend. 581; People v. Commissioners, 13 Wend. 310.) The words ‘ ‘ beginning near the mouth of Genesee River running south and by three different courses on the banks of the River two miles ” afford no criteria by which a surveyor, or *587 for that matter anyone other than the commissioners themselves, could determine where the road commenced or over what route it passed. Neither terminus of the entire highway sought to be laid out can be determined from the description. There being no reasonably precise beginning point, the end cannot be found. Considering that in 1806 the Town of Northfield encompassed an area larger than the present Monroe County towns of Brighton, Pittsford and Irondequoit, the phrase “near the mouth of Genesee River ” in the minds of the commissioners might have referred to a point considerably distant from the mouth of the river by present standards.
I find and hold that at least that portion of the minutes of 1806 claimed by the defendant to describe what is now known as Thomas Avenue, does not constitute the recording of a survey required by section 98 of chapter XVI of the Revised Statutes of 1829.
The fact that the highway south of the present Thomas Avenue was accurately described in surveyor’s terms, leads me to conclude, and I find, that the portion now claimed to include Thomas Avenue was not “ done-on actual survey ” as required by chapter 186 of the Laws of 1801.
It is conceded that the first course assumed by Mr. Miller commencing at the mouth of the river, ran through swampland and in fact has never been opened or used as a highway. There is evidence, and I find, that in 1806 and for some time thereafter, the customary means of travel from the river to a point near the present intersection of Thomas Avenue and St. Paul Boulevard was by a route different from that claimed by defendant to have been intended by the 1806 description and that vehicular travel by a road approximating the present Thomas Avenue was most difficult, if not impossible, because of the existence of a deep gully just south of the present intersection of Thomas Avenue and St. Paul Boulevard. Were the commissioners in 1806 in doubt as to the exact course to be followed from the river to the beginning of that portion of the highway accurately described? Did they intend that the road follow all or part of the route then most used for transporting merchandise? I find the evidence insufficient to establish that by the entry of November 5, 1806 the commissioners intended to lay out a highway including the present Thomas Avenue.
The defendant having failed to establish that Thomas Avenue was originally laid out pursuant to statute as a four-rod road, the width of its easement is necessarily confined to that portion actually used for highway purposes. The plaintiffs having con *588 ceded that the easement has been used to a width of three rods, and having found that there has been no user beyond that width, I hold that the plaintiffs are entitled to a judgment with costs declaring the width of the easement for highway purposes of Thomas Avenue to be 49% feet. Let judgment enter accordingly.