Richard S. Heller, J.
These three claims involve a single piece of property lying on the westerly side of State Highway No. 5350 which is known a§ Route 15, as it runs in a northwesterly direction through the northwestern portion of thg Tillage of Bath, Ñew York, The property had a frontage on Route 1§ which is knows as West Morris Street to Bath, New York, of about 699 feet,
Record title to that portion of the property fronting qn Route 15 was in Harold S. Hubertos and Lena B. Hubertos who are ngt parties to this claim, Thg portion of the property with this frontage was the subject of a contract of sale dated November 21, 1952, between Mr. and Mrs. Huhertus and the claimant, too Wemett Corporation, which contract called for a total purchase price or $79,599 and the execution and delivery of r< a good and sufficient warranty deed conveying the lands and premises above described to second party, free and clear from all Ileus and encumbrances except those hereinbefore specifically mentioned,” There was also a provision that at any time the Wemett Corporation had paid the snm of $25,QQ0 upon principal it u may request a transfer of the title pf the above described premises by warranty deed and give back a purchase money mortgage for toe balance of toe unpaid purchase price The easterly 2ÓQ feet of the frontage oh Route 15 wito a depth of approximately 125 feet was utilized as a gasoline station, The balance of this plot fronting on Route 15 was vacant. The Wemett Corporation also owns property immediately abutting on toe southwest which it obtained by deed dated February 21, 1957 and this property was also vacant,
In 1060 toe State completed a reconstruction of Route 15 as it went past this property and these claims resulted, As part of the reconstruction toe State filed an appropriation map in, tog ¡Steuben County Clerk’s office on March 28, I960 appropriating a very small triangle of land containing about .007 acres of land at the extreme northwesterly end of the frontage on *16 Boute 15. The claim for this appropriation is contained in Claim No. 37531. On this actual appropriation there was essentially no question since the claimants’ expert testified that the damage resulting therefrom was $56 with no consequential damage and the expert for the State testified that the damage resulting therefrom was $50 with no consequential damage to the property.
The second cause of action in Claim No. 37531 seeks recovery on the ground of an alleged de facto appropriation of a strip of land approximately 15 feet in width and running the entire length of the frontage on Boute 15. The same basis of recovery is alleged in Claim No. 37968 in which the claimant was a tenant operator of the gasoline station on a month-to-month tenancy. In Claim No. 37496 recovery of damages is sought on the ground of a change of highway grade in a village.
Prior to the reconstruction in 1960, the highway had remained in substantially the same condition since a prior reconstruction by the State between 1912 and 1914. From the early 1930s the gasoline station pump island was approximately 37 feet south of the center line of the 24-foot pavement which had been built in 1914. All of the frontage of this property was approximately at grade with the shoulder of the highway so that vehicles could be driven off the highway at any point along the entire frontage.
The gasoline station had a pump island equipped with five gasoline pumps and one Diesel fuel pump. Extending southwesterly from the pump island to the main gasoline station structure was a canopy under which cars could be serviced on the side of the pump island away from the road. The area beside the pump island under the canopy was too low and too narrow to permit the servicing of large trucks and tractor trailers on that side of the pump island. The gasoline station building contained a salesroom, office, lubrication room, washroom and storage room and it also had at the rear thereof a four-room apartment which was occupied by the claimant Jay Sherman.
In the 1960 reconstruction the State moved the center line of a new 48-foot pavement some three to four feet southwest of the center line of the previously existing pavement. Along the edge of the pavement it installed a six-inch curbing with four curb cuts each approximately 36 feet in length along the 690-foot frontage involved here. After the reconstruction the distance from the pump island to the curb line was approximately 11 feet. Adjacent to the curb line the State graded and planted grass extending to within four or five feet of the pump island.
*17 After the reconstruction cars could he serviced at this gasoline station only on the southwest side of the pump island under the canopy and large trucks and tractor trailers could not be serviced at all.
On the reconstruction shown on the State’s contract plans which were approved in 1914, all of the work by the State along this frontage was done on the north of a fence line shown on a survey made by the State in 1912 and lying approximately 20 feet south of the center line of the pavement constructed at that time by the State. On the survey and contract plans prepared for the 1960 reconstruction, the State showed a right of way line lying approximately 13 feet south of the fence line shown on the 1912 survey. The owners and occupants of this property fronting on this highway had enjoyed the uninterrupted and unquestioned use of "property at least as far north as the fence line for a great many years prior to the State’s 1960 reconstruction.
Under" these circumstances the burden was placed upon the State to establish the existence of the extent of its right of way in derogation of the title and long-continued use of the property by the owners abutting on the State highway. (Rochford v. State of New York, 153 Misc. 239; Porter v. State of New York, 5 Misc 2d 28.)
The State’s testimony establishes that from a study of deeds, a road existed continuously in this approximate location since at least 1795. None of these deeds, however, in any way established the width of the right of way.
The State employee who was charged with laying out the property lines and existing right of way lines for the making of the necessary appropriation maps in connection with the 1960 reconstruction testified that in laying out a 66-foot right of way he relied upon chapter 242 of the Laws of 1822 which directed certain Commissioners of Highways to lay out a four-rod road from the Village of Bath to the Town of Livonia. There was received into evidence a map and a survey which recited that it was the road laid out pursuant to the statute by the designated Commissioners. The State’s surveyor, however, could not find any way of relating that map and survey to the conditions existing on the ground. This certainly was no evidence that the highway existing prior to 1960 was the highway laid out in 1824 pursuant to chapter 242 of the Laws of 1822. (Porter v. State of New York, supra.)
There was also introduced into evidence a survey of “a route for the Hammondsport and Bath plank road commencing in the public highway in the Village of Hammondsport in the *18 Tews pf Urbana, and extending alpng said highway ip and through tho Village of Bath is the Town of Lath and from thenpe to the Village of Kennedyvñle in said Tows of Bath, Made March 13th and 14th 1850 by T. W. Ypunglove a practical surveyor as follows”. This purvey was signed by ‘1 Wm Hastings, President” and ” Ira W. Davis, Secretary” and acknowledged by them and recorded ip thp iSfeuben Oounty CJlerk’s office, ft was also established that th§ Ilanpnendsport and Bath Plank Bead Obmpany was organized pursuant to chapter 210 of thp Laws pf 1847 ap amended for the purpose of constructing a plank read such ap is described in Ihg'abpve* mentioned survey. It has also bpgn established that such plank road company in accordance with section .26 of chapter 210 ef the Laws' pf 1847 obtained the right to use certain public highways existing in the Tpwn pf Bath and the Village pf'Bath.
The court is also satisfied that the road for which a center line was described in the survey of 1850 is the same road whieh existed prior to the 1012 reconstruction and with minor differences of the center line now exists.
The court -finds, however, that this evidence is not sufficient to establish the existence pf a four-red right of way, "
Section 81 of chapter 210 of the Laws of 1847 required that 1 f Evpry plank rp.ad made by virtue of this not, shall be laid put at least four rods wide ”.
The difficulty is that there is np propf that this rpad was ever laid out in accordance with chapter 210 of fhp Laws pf 1847. Sgptipn 8 of that statute required that when a. Board pf Super* yispps granted an application for the construction of a plank road, ” it shall appoint three disinterested persons who arg npf the owners of real estate in any town through which such road shall bp proposed to be constructed * * * commissioners to lay put such rpad * * # they shall cause an accurate survey and description to be made of gush route and pf the land necessary to be taken by such company for the construction of such rpad and the necessary buildings and gates, they shall subscribe such survey and acknowledge its execution as the execution of deeds is required tp be acknowledged, in prde-r that they may be recorded, and they shall cause such survey to he recorded in the clerk’s office pf such county,”
The survey of 1850 dpes net purport to be the act of Gommig* sioners for the laying out of such a highway as required by the Statute. Furthermore, a William Hastings was "named :as a director and stockholder pf thp Hanunondsporf and Bath Plank Hoad Óompqny and an I. W. Davis and T. W. Younglove are listed as stockholders.
*19 The State, therefore, has failed to establish that this road was laid out under any statute. The evidence In fast establishes that a road has existed in this general ideation since as early as 1795 and apparently obtained its character as a public highway by user, Under these circumstances its width is determined by the width of the improvement and use, (People v. Sutherland, 252 N. Y. 86; Walker v. Caywood, 31 N. Y. 51.)
The court finds that in addition to the appropriation set forth on the appropriation map titled “ Bath Village, Sh, No, 5850 Steuben County Map No. 12, Parcel No, 13 ” copy of which is annexed to Claim No, 37531, there has been a de facto appropriation by the State of a strip of land approximately 18 feet wide and 690 feet in length, containing approximately 7,590 square feet abutting on Boute 15,
Claim No, 37496 seeks recovery based on a theory that there was no appropriation of property but that there was a change of grade and a deprivation of access by the installation of curbing along the frontage on Boute 15 with only four 36-foot curb cuts, That claim must be dismissed since the proof establishes that there was a de facto appropriation and any award for the do facto appropriation must include all damages. In fact, the claimant has asserted in his allegations of the de facto appropriation in Claim No. 37531 that, “Aa a result of the said taking, access to and egress from claimant *s property has been seriously impaired ”.
The testimony as to consequential damage by the claimants’ expert attributed a major factor of consequential damage to the installation of the curbing with the four 36-foot outs along this frontage. The proof shows that the greatest variation was only a maximum of 7 inches and that this occurred along the curb line. In fact, there is no contention by any witness that any change of grade resulted in any damage to this claimant. The most that is said is that the installation of curbing with a limitation of access from the highway to four 36-foot cuts constituted a damaging deprivation of access,
Beeovery for loss of access can only be had where the action taken is such as to leave the property with no suitable means of access, (Meloon Bronze Foundry v. State of New York, 6 A D 2d 993.) The claimant has failed to make out any such basis for recovery here.
The court finds that the fair market value of the property prior to the appropriation by the filing of the appropriation map on March 23,1960 and the de facto appropriation included in the reconstruction which was completed on July 1, 1960, was $60,000. The value of the property after the appropriation *20 was $48,500 and the appropriation rcsullcd in damage in the amount of $11,500.
The appropriation map was filed in the Steuben County Cleric’s office on March 23, 1960 and the highway reconstruction was completed on July 1,1960. Claim No. 37531 seeking recovery for the taking by map and the de facto taking was filed on February 27, 1960. There is no evidence in the record as to when the claimant was deprived of the use and occupancy of the property involved in either the appropriation by map or the de facto appropriation. Under these circumstances the court finds that on the second cause of action in Claim No. 37531, the claimant is entitled to interest on a judgment in the amount of $50 from March 23, 1960. In the first cause of action in Claim No. 37531 claimant is entitled to judgment in the amount of $11,450, with interest thereon from February 27, 1960.
The court makes no determination of the title in and to the land affected by the appropriation and judgment shall not be entered until the Attorney-General shall have filed with the Clerk of the court his certificate in writing, pursuant to rule 28 of the Rules of the Court of Claims, approving title of the claimant in and to the property affected by the appropriation and directing that judgment shall be entered in the name of the claimant.
The claim has not been assigned. The court has viewed the premises.
Claim No. 37968 is dismissed inasmuch as there is no proof of any damage to the interest of this claimant by reason of the appropriation of property by the State.
Claim No. 37496 is hereby dismissed since there is no proof of any damage resulting from the allegations contained therein.
The award to claimant herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having any right or interest in any stream, lake, watercourse, street, road, highway, or right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of public service electric, telephone, telegraph, pipe and railroad lines.